YADEGAR, MINOOFAR & SOLEYMANI LLP
NAVID YADEGAR, SBN 205315
E-Mail: navid@ymsllp.com
NAVID SOLEYMANI, SBN 219190
E-Mail: soleymani@ymsllp.com
1875 Century Park East, Suite 1240
Los Angeles, CA 90067-3206
Telephone: (310) 499-0140
Facsimile: (888) 667-9576

Attorneys for Plaintiffs
*Sandra Olson, and Global Financial Impact, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SANDRA OLSON, an individual; and GLOBAL FINANCIAL IMPACT, LLC, a Wyoming limited liability company<br><br>Plaintiffs,<br><br>vs.<br><br>WORLD FINANCIAL GROUP INSURANCE AGENCY, LLC, an Iowa limited liability company; and DOES 1-10 inclusive<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY RELIEF** |

Plaintiff, Sandra Olson ("Olson") and Global Financial Impact, LLC ("GFI, collectively with Olson, "Plaintiffs") hereby bring their complaint against defendants World Financial Group Insurance Agency, LLC ("WFG"), and DOES 1-10 (collectively with WFG, "Defendants") and state and allege as follows:

## I. JURISDICTION & EXHAUSTION OF REMEDIES

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(a)(1) because the pecuniary value of the declaratory and injunctive reliefs sought herein exceed $75,000.00, exclusive of interest and costs, and the action is between citizens of different states.

## II. THE PARTIES

2. Plaintiff Olson is an individual residing in the County of Santa Clara and is a Citizen of the State of California.

3. Plaintiff GFI is a Wyoming limited liability company, with its principal place of business in the County of Sacramento, State of California.

4. Plaintiffs are informed and believe and thereon alleged that WFG is an Iowa limited liability company with its principal place of business in Fulton County, Georgia.

5. Defendants Doe 1 through Doe 10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to the Plaintiffs. When their true names and capacities are ascertained, the Plaintiffs will amend this Complaint by inserting their true names and capacities herein. the Plaintiffs is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that the Plaintiffs' damages as herein alleged were proximately caused by those defendants. Each reference in this Complaint to "Defendant" or "Defendants" refers also to all Defendants sued under fictitious names.

6. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned each of the Defendants, including all Defendants sued under fictitious names, was the agent, employee, or representative of each of the remaining Defendants, and in doing the things hereinafter alleged, was at times acting within the course and scope of this agency or employment, and at other times, acting in his own individual capacity. In the alternative, each of the

individually named Defendants, as alleged herein below, acted in concert and in furtherance of their fraudulent plan and scheme and each actively participated in the wrongful acts alleged herein below.

## III. GENERAL ALLEGATIONS

### A. WFG IS A MULTI-LEVEL MARKETING INSURANCE AGENCY

7. According to its website, WFG provides financial services via life insurance, retirement strategies, and a variety of wealth-building strategies.

8. WFG adds that "[o]ur field of independent agents have chosen our platform to build their own independent business. When doing so, our agents inform their customers about the benefits of life insurance- how it can protect loved ones, families and children, impact retirement for couples and individuals, and be a lever in one's financial strategy for the near and distant future.

9. WFG is built on a multi-level marketing model: when an agent signs on to become affiliated with WFG, they are encouraged to recruit additional agents, and, they are compensated for sales of their recruits and any sales by any agent that is brought on by that recruit.

### B. OLSON'S ASSOCIATION WITH WFG

10. Olson is married to Eric Olson ("Eric").

11. In or about 2003, Eric became affiliated with WFG and started to recruit agents. Eric was very successful in building his teams.

12. In or about 2013, Eric recruited Olson to become a member of his team.

13. Thereafter, and continuing to 2023, Eric and Olson worked together to build Eric's team. Olson primarily assisted Eric and infrequently sold products.

14. To join Eric's team, Olson was required to sign an agreement with WFG (the "Agreement," a specimen of which is attached hereto as Exhibit 1 and is hereby incorporated by reference).

15. Olson is informed and believes and thereon alleges that every agent that becomes affiliated with WFG must sign the Agreement.

16. Among other things, the Agreement contains a restrictive covenant that is against California law. Specifically, paragraph 2.15 provides as follows:

> Except as prohibited by law, during the period that Agent is an Agent of WFG and for a period of two (2) years following the termination of this Agreement for any reason, Agent shall not, either individually or in partnership or jointly or in conjunction with any other person or entity, as principal, agent, consultant, contractor, employer, employee or in any other manner, directly or indirectly, solicit, induce or entice away or in any other manner persuade or attempt to persuade any individual who is a current agent of WFG and with whom the Agent had business contact with on behalf of WFG or its affiliated or related entities, to terminate or alter their agent relationship with WFG to join a competing organization. This non-recruitment restriction is limited and only applies with respect to any recruitment of an agent that resided in or engaged in business activities in the geographic area within fifty (50) miles of the location of the Agent's office(s) during the eighteen (18) month period preceding the recruitment. This provision survives the termination of this Agreement.

17. Paragraph 12.5 of the Agreement is hereinafter referred to as the "Non-Solicitation Provision."

## C. **ERIC CONTEMPLATED SELLING HIS INCOME STREAM TO OLSON**

18. Every WFG agent has a unique code. Compensation payable to that agent is paid based on that code.

19. Olson was very ambitious and wanted to take on a more active role in the business.

20. In or about 2023, Eric contemplated selling his code to Olson. That would mean that Olson would step into the shoes of Eric and be in control of his hierarchy and collect the revenues that Eric was generating from the sales of the agents that were in his hierarchy.

21. At that time, this practice (of selling to a spouse) was specifically and expressly authorized by the rules of WFG. In fact, that exact strategy had been implemented by at least one other agent.

22. Shortly after learning that Eric intended to sell his code to Olson, WFG terminated the program. The termination of that program also eliminated certain privileges to which spouses, including Olson, had been entitled. Therefore, Olson became less, not more, involved in the business.

23. Notwithstanding the negative impact on Olson, she did not immediately terminate the Agreement even though she was not performing any services under the Agreement and was not receiving any benefits from that Agreement.

**D. <u>OLSON OFFICIALLY RESIGNED FROM WFG</u>**

24. On or about October 6, 2023, Olson terminated her agreement with WFG so that she could go and start her own competing business.

25. In a letter dated October 6, 2023, WFG confirmed her resignation and demanded that she comply with the Non-Solicitation Provision of the Agreement. A true and correct copy of that letter is attached hereto as Exhibit 2.

26. Specifically, WFG wrote that "you have not and will not[] … [e]ngage in any business, practice or behavior or take any action which has resulted or will result in any violation of any restriction or covenant to which [you are] subject pursuant to any agreement."

27. WFG also instructed Olson to refrain from soliciting any WFG agent from leaving: "you have not and will not[] … [e]ither individually or in partnership or jointly or in conjunction with any other person or entity, as principal, agent, consultant, contractor, employer. employee or in any directly or indirectly. solicit, induce or entice away or in any other manner persuade or attempt to persuade any individual who is a current agent of WFGlA and with whom the Agent had business contact with on behalf of WFGIA or its affiliated or related entities, to terminate or alter their agent relationship with WFGlA to join a competing organization."

28. Olson is informed and believes and thereon alleges that WFG sends a similar letter to any California agent who resigns from WFG.

**E. <u>OLSON CREATED GFI TO COMPETE WITH WFG; SHE WAS HAMPERED BY WFG'S ILLEGAL NON-SOLICITATION PROVISION</u>**

29. After Olson left WFG, she created a new company, GFI.

30. To compete, Olson needed to recruit agents to sell life insurance (and other similar) products in California. In that capacity, GFI was WFG's competitor.

31. Olson was aware that her agreement with WFG contained the Non-Solicitation Provision that purported to limit her ability to contact, solicit, recruit and or hire (directly or

indirectly on behalf of GFI) any of WFG's current agents, or any agent that had worked for WFG in the past two years.

32. Under California law, these restrictive covenants are illegal and cannot be enforced. But, many of WFG's agents who are also subject to the same restrictive covenants fear that they might be sued by WFG if they violate those provisions. Plaintiffs are informed and believe that at least some WFG agents fear that fighting a lawsuit against WFG is too costly, even if they prevail. Therefore, out of caution, these agents choose to comply with those provisions even though they are illegal. This atmosphere of fear and uncertainty hampered Olson's ability to hire many agents who were, or had been, affiliated with WFG.

33. Therefore, WFG benefited, and continues to benefit, from the mere inclusion of the Non-Solicitation Provision in the Agreement because it creates an atmosphere of uncertainty and fear in the marketplace, thereby chilling competition by limiting mobility among its agents and former agents in California.

34. Plaintiffs have suffered, and are continuing to suffer, harm as a result of WFG's anticompetitive conduct.

**FIRST CAUSE OF ACTION**
**Declaratory Relief – Noncompete Provision**
**(By Olson Against All Defendants)**

35. Olson hereby incorporate by reference each and every allegation contained in this complaint as though fully set forth herein.

36. An actual controversy has arisen between the Olson and Defendants in that:

a. Defendants contend that Olson is bound by paragraph 2.15 of the Agreement that requires her for a period of two years following her separation from Defendants to not "solicit, induce or entice away or in any other manner persuade or attempt to persuade any individual who is a current agent of WFG and with whom the Agent had business contact with on behalf of WFG or its affiliated or related entities, to terminate or alter their agent relationship with WFG to join a competing organization."

b. Olson contends that the non-solicitation provision is unenforceable as contrary to California law and public policy as articulated in sections 16600 and 16600.5 of the

Business and Professions Code. *See, e.g., AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 935 (2018) (holding that a provision for "nonsolicitation of employee" was void under section 16600."); *Barker v. Insight Glob., LLC*, 2019 WL 176260, at *2 (N.D. Cal. Jan. 11, 2019) ("The AMN court further found that the plain meaning of § 16600 applied to the nonsolicitation of employees provision in the CNDA"); *Conversion Logic, Inc. v. Measured*, Inc., 2019 WL 6828283, at *3 (C.D. Cal. Dec. 13, 2019) (same); *WeRide Corp. v. Kun Huang*, 379 F.Supp.3d 834, 852 (N.D. Cal. 2019) (citations omitted) (finding "the reasoning of Barker and AMN, including their application of Edwards, to be persuasive" for purposes of voiding a non-solicitation clause under § 16600); *Minnesota Life Ins. Co. v. Link-Allen & Assocs., Inc.*, No. 20-CV-06082-RS, 2021 WL 9860789, at *4 (N.D. Cal. Jan. 22, 2021) (same). The protections of section 16600 applies equally to business contacts as it does to employment contracts. *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1149 (2020)("we agree with the parties that section 16600 applies to business contracts);

37. A judicial determination is necessary and appropriate at this time to determine the rights, duties and obligations of the parties with regard to the Non-Solicitation Provision, as applied in California. *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 907 (1998) (upholding trial court's declaratory judgment that "the noncompetition agreement is an "unenforceable contract [ ] to restrain trade.")

38. Olson has no adequate remedy at law.

39. Wherefore, Olson seeks a judicial resolution that (1) the Non-solicitation Provision is illegal and unenforceable in California; and (2) Olson is free to directly or through GFI recruit and/or hire current or former employees of WFG to compete with WFG's business in California.

**SECOND CAUSE OF ACTION**
**Unfair Business Practices**
**(By GFI Against All Defendants)**

40. GFI hereby incorporates by reference each and every allegation contained in this complaint as though fully set forth herein.

41. The UCL forbids acts of "unfair competition." Cal. Bus. & Prof. Code, § 17200.

42. "[U]nfair competition" includes "any unlawful, unfair or fraudulent business act or practice." Because the unfair competition law is written in the disjunctive, it establishes three varieties of unfair competition. The acts or practices may be unlawful, or unfair, or fraudulent. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal. 4th 163, 180.

43. "Unlawful" business activity under the UCL, includes "anything that can properly be called a business practice and that at the same time is forbidden by law." *Barquis v. Merchants Collection Assn.* (1972) 7 Cal. 3d 94, 113. Thus, the unfair competition law "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech*, 20 Cal. 4th at 180.

44. Defendants' actions and conduct, as alleged herein, constitute unlawful, unfair, deceptive, and misleading business practices, prohibited by California Business and Professions Code Sections 17200 *et seq.*

45. Among other things, it has long been held in California that "[a]n employer's use of an illegal noncompete agreement also violates the UCL." *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575 (2009); *see, also, Robinson v. U-Haul Co. of California*, 4 Cal. App. 5th 304, 318 (2016)(" The alleged unfair business practice in this case was not just the inclusion of the noncompetition covenant in [defendant's] dealer contracts, but the strategic use of litigation and threatened litigation to achieve its anticompetitive purpose" (emphasis added)); *Khan v. K2 Pure Sols., LP*, 981 F. Supp. 2d 860, 864 (N.D. Cal. 2013) (use of an agreement that contained an illegal noncompete provision "by definition, violates the UCL"); *People v. McKale*, 25 Cal.3d 626, 635(1979) (it was unfair competition for a mobilehome park operator to require tenants to sign rules and regulations containing unlawful terms).

46. GFI is informed and believes, and thereon alleges, that Defendants utilize improper, unlawful and tortuous means to force their former agents to not recruit, solicit or hire any current or former agent of WFG in California.

47. Defendants' tactics have created a market environment that unfairly and illegally benefits WFG and unfairly disadvantages its competitors, including GFI, within California.

48. The UCL provides that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." The UCL laws empower the courts to "make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code, §17203. "Injunctions are the primary form of relief available under the UCL." *Kwikset Corp. v. Superior Court* (2011) 51 Cal. 4th 310, 337; *Barquis v. Merchants Collection Ass'n* (1972) 7 Cal. 3d 94, 111 (the Legislature "intended … to permit courts to enjoin ongoing wrongful business conduct in whatever context such activity might occur").

49. Generally, an injunction is necessary when there is a reasonable probability that the past acts complained of will recur. *California Service Station & Auto. Repair Ass'n v. Union Oil Co. of Calif.* (1991) 232 Cal. App. 3d 44, 57; *Pappas Co. v. E. & J. Gallo Winery* (E.D. Cal. 1985) 610 F.Supp. 662, 672; *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.* (2018) 28 Cal. App. 5th 923, 952 (upholding an injunction that enjoined an employer from attempting to enforce a similar noncompete provisions "against individual defendants and others similarly situated" because "[a]bsent such an injunction, there was nothing to prevent [defendant] from suing, or threatening to sue, other current/former [ ] California employees who wanted to leave, or had left, its employ and went to work for a competitor").

50. Among other things, GFI is entitled to a temporary and/or permanent injunction as follows: (1) enjoining Defendants from requiring their California-based agents from signing any agreement that includes the Non-Solicitation Provision or provisions that are substantively the same as or similar to it; (2) enjoining Defendants from enforcing, or attempting to enforce, the Non-Solicitation Provision of the Agreement against any current or former agent in California; (3) ordering Defendants to provide written notice of the prohibition on their ability to enforce the Non-Solicitation Provision to its current and former agents who worked for WFG within the past two years.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against each defendant as follows:

1. For a declaration that the Non-Solicitation Provision is illegal and unenforceable, and that Plaintiffs are free to recruit and/or hire current or former employees of WFG to compete with WFG's business in California.

2. For a temporary and/or permanent injunction as follows: (1) enjoining Defendants from requiring their California-based agents from signing any agreement that includes the Non-Solicitation Provision or provisions that are substantively the same as or similar to it; (2) enjoining Defendants from enforcing, or attempting to enforce, the Non-Solicitation Provision of the Agreement against any current or former agent in California; (3) ordering Defendants to provide written notice of the prohibition on their ability to enforce the Non-Solicitation Provision to its current and former agents who worked for WFG within the past two years.

3. For attorneys' fees and costs pursuant to the Agreement and/or Code Civil Procedure section 1021.5; and.

4. For such other and further relief as the Court deems proper and just.

DATED: January 25, 2024

Respectfully submitted,
YADEGAR, MINOOFAR & SOLEYMANI, LLP

By: */s/ Navid Yadegar*
NAVID YADEGAR
Attorneys for Plaintiffs