UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SANDRA OLSON, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>WORLD FINANCIAL GROUP INSURANCE AGENCY, LLC,<br><br>   Defendant. | Case No.   24-cv-00477-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 24 |

Plaintiffs Sandra Olson ("Ms. Olson") and Global Financial Impact, LLC ("GFI") bring claims against Defendant World Financial Group Insurance ("WFG") for damages, injunctive relief, and declaratory relief relating broadly to Ms. Olson's prior affiliation with WFG.

Before the Court is WFG's motion to dismiss GFI's two claims asserted against WFG. WFG's Motion to Dismiss ("Mot." or "Motion"), ECF No. 24. The motion is fully briefed. The Court heard oral argument on the motion on May 2, 2024.

For the reasons set forth below, the Court GRANTS WFG's motion.

**I.   BACKGROUND**

   **A.   The Parties**

The following factual background is taken from the complaint except if otherwise noted. WFG is a multi-level marketing company that provides financial services via life insurance, retirement strategies, and a variety of wealth-building strategies. First Amended Complaint ("FAC") ¶ 9, ECF No. 22. When an agent signs on to become affiliated with WFG, they are encouraged to recruit additional agents, and they are compensated for sales of their recruits and any sales by any agent that is brought on by that recruit. *Id.* ¶ 10. In or about 2013, Ms. Olson

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS

1

joined WFG and started working in the same hierarchy as Eric Olson ("Mr. Olson"). *Id.* ¶ 13. Ms. Olson signed an agreement with WFG ("the Agent Agreement") which included multiple provisions that the Olsons contend are against California law. *Id.* ¶¶ 16–21 (the "Restrictive Covenants").

Beginning in about 2022, Mr. Olson expressed a desire to leave WFG, and he began discussing with WFG executives how best to leave WFG and sell or transfer, his "code," which was his commission revenue stream from WFG. *Id.* ¶ 26. As of 2022, WFG had a policy that permitted agents of a certain level to either sell their code to WFG or its affiliates, or to transfer the code to their spouse. *Id.* ¶ 27. In or about October 2023, WFG announced that it was changing its policy or rules so that agents would no longer be permitted to transfer their codes to their spouses. Ms. Olson alleges that that WFG announced this change in policy in response to Mr. Olson's request that he be permitted to transfer his code to Mrs. Olson. *Id.* ¶ 28.

Based on WFG's decision to prevent Mr. Olson from selling or transferring his code, Ms. Olson decided that she did not want to continue working for WFG. *Id.* ¶ 30. Ms. Olson terminated her agreement with WFG around October 2023. *Id.* ¶ 31. WFG responded to Ms. Olson's resignation demanding that she comply with the Restrictive Covenants. *Id.* ¶ 32.

Shortly after Ms. Olson resigned from WFG, she formed GFI with the intention of selling insurance products and competing with WFG. *Id.* ¶ 38. GFI is a multi-level marketing insurance agency, similar to WFG. *Id.* ¶ 38. To compete against WFG and to grow GFI, Ms. Olson alleges that she needs to recruit agents to sell insurance products in California. *Id.* ¶ 39. Ms. Olson contends that she and GFI have been harmed by the Restrictive Covenants, which have dissuaded agents from joining GFI. Specifically, she contends that many agents are "fearful of WFG because of Defendants' threats against them if they leave WFG and join GFI." *Id.* ¶ 46. GFI brings claims against WFG for (1) tortious interference with prospective economic advantage, and (2) violation of Cal. Bus. & Prof. Code § 17200.

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
2

### B. Procedural History

#### 1. The *WFG Action*

WFG brought the first of multiple complaints involving these parties on January 25, 2024. *World Fin. Group Ins. Agency v. Eric Olson*, No. 24-cv-00480-EJD (N.D. Cal.) (the "WFG Action"). WFG filed a complaint, originally in Santa Clara Superior Court, against the Olsons alleging that Mr. Olson breached his contract with WFG and misappropriated confidential business information. The complaint includes seven causes of action for (1) breach of contract, (2) tortious interference, (3) civil conspiracy, (4) fraud, (5) unjust enrichment, (6) conversion, and (7) unfair competition in violation of California Business and Professions Code Section 17200. In that complaint, WFG seeks injunctive relief, monetary damages, and attorneys' fees and costs.

On January 26, 2024, Mr. Olson removed the case to this Court. On January 29, 2024, WFG filed a motion for temporary restraining order and a motion for expedited discovery. *WFG Action*, ECF No. 17. The Court denied the TRO in that case on February 22, 2024, and granted WFG's request for expedited discovery. *WFG Action*, ECF No. 64.

#### 2. The *Sandra Olson/GFI Action*

On January 25, 2024, Ms. Olson brought the present suit on behalf of herself and her company, GFI, alleging that her ability to compete with WFG was hampered by WFG's non-solicitation provision in the Agent Agreement she signed when she was employed with WFG. Complaint ¶¶ 31–32, ECF No. 1. On March 11, 2024, Ms. Olson and GFI filed an amended complaint. *See* FAC. The FAC brings claims for declaratory and injunctive relief, alleging that WFG violated Cal. Bus. & Prof. Code, § 17200. The FAC also seeks attorneys' fees and costs.

On March 22, 2024, WFG filed a motion to compel arbitration arguing that Ms. Olson signed an arbitration agreement in 2023 which requires that Ms. Olson's claims be submitted to binding arbitration. WFG filed the present motion to dismiss on March 25, 2024.

#### 3. The *Eric Olson Action*

On January 26, 2024, Mr. Olson filed a separate complaint against WFG bringing claims for (1) unfair competition in violation of Cal. Bus. & Prof. Code, § 17200, (2) tortious

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
3

1  interference, (3) conversion, (4) breach of contract/covenant of good faith and fair dealing, and (5)

2  declaratory relief. *Eric Olson v. World Fin. Group Ins. Agency*, No. 24-cv-00481-EJD (N.D.

3  Cal.), ECF No. 1. WFG filed a motion to compel arbitration in the Eric Olson Action on March

4  22, 2024.

## II.   LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While plaintiffs must allege "more than a sheer possibility that a defendant has acted unlawfully," the plausibility standard "is not akin to a probability requirement." *Id.*

For purposes of ruling on a Rule 12(b)(6) motion, the Court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not, however, "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). The Court may also "look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 (9th Cir. 1995).

To contest a plaintiff's showing of subject matter jurisdiction, a defendant may file a Rule 12(b)(1) motion. Fed. R. Civ. P. 12(b)(1). A defendant may challenge jurisdiction "facially" by arguing the complaint "on its face" lacks jurisdiction or "factually" by presenting extrinsic

evidence demonstrating the lack of jurisdiction on the facts of the case. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

In resolving a factual attack on jurisdiction, the Court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.* (citing *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). While the Court may consider evidence outside of the pleadings to resolve a "factual" Rule 12(b)(1) motion, "a [j]urisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Safe Air for Everyone*, 373 F.3d at 1039 n.3 (citing *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 140 (9th Cir. 1983)) (internal quotation marks omitted).

## III. DISCUSSION

GFI asserts two claims: (1) tortious interference with prospective economic advantage; and (2) violation of UCL, Cal. Bus. & Prof. Code § 17200. WFG argues that the Court should (1) dismiss GFI's tortious interference claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and (2) dismiss GFI's UCL claim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction due to Plaintiffs' failure to establish Article III standing. WFG also argues that even if it did have standing, GFI has failed to state a claim for a violation of Cal. Bus. & Prof. Code § 17200 under Rule 12(b)(6), and GFI also has failed to meet the injury-in-fact, causation, and redressability requirements of Article III standing.

### A. Tortious Interference with Prospective Economic Advantage

WFG argues that GFI fails to state a claim for tortious interference with prospective economic advantage because GFI has not plausibly alleged an existing economic relationship or

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
5

wrongful interference with that relationship. Mot. 5.

To prove an intentional interference with prospective economic advantage, a plaintiff must establish "the existence of an economic relationship with some third party that contains the probability of future economic benefit to the plaintiff." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 509 (2017) (quotations omitted). Intentional interference with prospective economic advantage has five elements: (1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action. *Id.* at 512.

WFG contends GFI has failed to allege the first and third elements. This first element "has two parts: (1) an existing economic relationship that (2) contains the probability of an economic benefit to the plaintiff." *EcoHub, LLC v. Recology Inc.*, No. 22-CV-09181-TSH, 2023 WL 6725632, at *11 (N.D. Cal. Oct. 11, 2023) (quoting *Roy Allan Slurry Seal*, 2 Cal. 5th at 512). A cause of action for tortious interference "has been found lacking when either the economic relationship with a third party is too attenuated or the probability of economic benefit too speculative." *Id.* (quotations omitted). "[S]peculative expectancies" have traditionally not been protected "usually because there is no sufficient degree of certainty that the plaintiff ever would have received the anticipated benefits." *Id.* (quotations omitted).

Here, both Ms. Olson and GFI have brought claims against WFG for tortious interference with prospective economic advantage. The FAC alleges that *Ms. Olson* "had pre-existing relationships" with her "friends and family members who worked as WFG agents and who may want to join GFI." FAC ¶ 59. The FAC lacks any similar allegations regarding *GFI's* relationships with third parties. GFI contends that it was not required to plead "a *direct* economic relationship between a plaintiff and a third party," and at a minimum, "GFI has an indirect economic relationship with WFG agents who previously worked in Pinnacle, because Mrs. Olson is the sole member (and founder) of GFI and was formed so that Mrs. Olson could compete with

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS

6

WFG." GFI's Opposition to Motion to Dismiss ("Opp.") 6–7 (emphasis in original), ECF No. 27.

The Court is not persuaded that GFI can meet its pleading burden to state a claim for tortious interference with prospective economic advantage based on an indirect relationship between GFI and former WFG agents. This claim plainly requires the plaintiff plead "the existence, between *the plaintiff* and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff…and actual disruption of [that] relationship." *Roy Allen Slurry Seal*, 2 Cal. 5th at 512 (emphasis added). The FAC alleges that Ms. Olson has "an economic relationship with certain WFG agents, and particularly with the 20,000 (or so) WFG agents who were part of Mr. Olsons' business within WFG called Pinnacle Leadership Financial Agency." Opp. 6 (citing FAC ¶¶ 22, 26). But absent some allegations regarding an existing relationship between *GFI* and some third party, GFI has not plausibly alleged the first element to state a claim for tortious interference with economic advantage. *See Hiraide v. Vast systems Tech. Corp.*, No. C-08-04714RMW, 2009 WL 2390352, at *13 (N.D. Cal. Aug. 3, 2009) (dismissing intentional interference with prospective economic advantage claim where the complaint alleged that "defendants sought to interfere with the contractual and business relationship between [] plaintiff's business and [a third party]") (cleaned up).

And even if GFI could rely on the existing economic relationships between Ms. Olson and the Pinnacle agents, the Court is skeptical that the allegations with respect to the group of former Pinnacle agents who "may want to join GFI," "wish to join GFI," or might be "contemplating leaving WFG and joining GFI" is sufficient. FAC ¶¶ 42, 26, 51. Although GFI is not required at the pleading stage to identify by name the agents, GFI is required "to identify a particular relationship or opportunity with which the defendant's conduct is alleged to have interfered." *Damabeh v. 7-Eleven, Inc.*, No. 5:12-CV-1739-LHK, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013); *AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2018 WL 3428525, at *6 (N.D. Cal. July 13, 2018) (intentional interference with prospective economic advantage claim failed where the "FAC merely lump[ed] allegations regarding more than two hundred [sic] web publishers without pleading factual allegations as to the specific relationship between [plaintiff]

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
7

1   and each publisher").

2   Accordingly, the Court will grant WFG's motion to dismiss GFI's third cause of action for

3   tortious interference with prospective economic advantage with leave to amend.

**B.     UCL Claim**

WFG next argues that GFI's UCL claim fails because (1) GFI lacks standing under Rule 12(b)(1) to assert a UCL claim based on contracts to which it is not a party; and (2) GFI lacks statutory standing under Rule 12(b)(6) because it has not sufficiently alleged that it lost money or property as a result of unfair competition.

**1.     12(b)(1) Standing**

WFG contends that GFI's UCL claim fails under Rule 12(b)(1) for lack of standing because it is based solely on contracts to which it is not a party. Specifically, WFG argues that GFI cannot maintain a UCL claim based on the Agent Agreement—an agreement WFG uses with its agents. GFI responds that (1) it is permitted to assert a claim under the UCL against WFG, a business competitor, even if the two companies had no "direct dealings" with each other, and (2) GFI is not asserting a claim "based on contracts to which it is not party" but rather "GFI is alleging that WFG has engaged in unfair competition by including an illegal Restrictive Covenant in its agreements with agents and then threatening to sue agents who wish to join GFI." Opp. 11–14.

California's UCL prohibits unfair competition by means of any unlawful, unfair or fraudulent business practice. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) (citing Cal. Bus. & Prof.Code §§ 17200–17210). To have standing under California's UCL, as amended by California's Proposition 64, plaintiffs must establish that they (1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition. *Id.* To plead a UCL claim, the plaintiffs must show, consistent with Article III, that they suffered a distinct and palpable injury as a result of the alleged unlawful or unfair conduct. *Id.* (citation omitted). The requisite injury must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citation omitted). In addition to meeting

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
8

the UCL's standing requirements, the plaintiffs must also satisfy the federal standing requirements under Article III. *Id.* at n.4 (citing *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001)).

The parties agree that a business competitor may have standing to assert a UCL claim even if there were no "direct dealings" between the two competitors. *See L. Offs. of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 563 (2013) ("a business competitor who adequately alleges that he or she has suffered injury in fact and lost money or property as a result of the defendant's unfair competition is not necessarily precluded from maintaining a UCL lawsuit against the defendant just because he or she has not engaged in direct business dealings with the defendant"). Notwithstanding of that general proposition, WFG argues that a competitor like GFI lacks standing to bring a UCL claim in federal court based solely on provisions in contracts to which it is not a party. The Court agrees.

*Western Air Charter, Inc. v. Schembari* considered a standing challenge with similar facts. 2017 WL 10638759 at *9 (C.D. Cal. Oct. 6, 2017). There, a pilot entered into an employment agreement containing non-competition and non-solicitation clauses with his former employer, Jet Edge. *Id.* at *1. The pilot resigned and began working for Phenix Jet and ACP Jet—Jet Edge's competitors. Jet Edge sued the pilot and his new employers, Phenix Jet and ACP Jet, asserting breach of contract and other claims. The pilot, Phenix Jet, and ACP Jet filed a UCL counterclaim against Jet Edge, alleging that Jet Edge "included illegal non-competition and confidentiality provisions in [the pilot's] Employment Agreement as well as the employment agreements of all other Jet Edge employees." *Id.* at *9. The court found that, although *the pilot's* allegation that his former employer included the non-compete provisions in his employment contract "could support a claim for unlawful conduct pursuant to the UCL," the same could not be said for Phenix Jet and ACP Jet's UCL claim because they "are not parties to the employment agreement and do not have standing to assert a claim based on the agreement." *Id.* at *10. The court dismissed the UCL claim because it was "brought on behalf of ACP Jet and Phenix Jet, but [was] based solely on [the pilot's] employment contract with Jet Edge." *Id.* at *10. Similarly here, although Ms. Olson's

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
9

allegation that her former employer included the non-compete provisions in her employment contract "could support a claim for unlawful conduct pursuant to the UCL," GFI's cannot.

GFI argues that *Western Air Charter* has no bearing here "because GFI is not trying to enforce the contractual rights of another party"—rather, "GFI is asserting that the inclusion and threatened enforcement of an illegal provision constituted an unfair competition that affected GFI's ability to recruit those workers and, thereby, caused it to lose market share, opportunities, and revenues." Opp. 14–15. But that distinction is not persuasive because the defendants whose UCL claim the court dismissed in *Western Air Charter* similarly were not "trying to enforce the contractual rights of another party." GFI here, like the defendants in *Western Air Charter*, brings a UCL claim based on its allegations that WFG "requir[es] all of their California-based agents to sign agreements that include the Restrictive Covenants." FAC ¶ 85. It is unclear how GFI can maintain that its injuries do not "[arise] directly from the alleged contract" when its claims are based on allegations that WFG's use of Restrictive Covenants is harming GFI's ability to recruit. GFI, like the defendants in *Western Air Charter*, is not a party to the agreements containing the Restrictive Covenants it now challenges. *See also NovelPoster v. Javitch Canfield Grp.*, No. 13-CV-05186-WHO, 2014 WL 5687344, at *6 (N.D. Cal. Nov. 4, 2014) (dismissing UCL claim for lack of standing where claim was "squarely based on a contractual relationship to which counterclaimants have not alleged they were a party").

GFI cites a number of cases that it argues warrant a different result because those cases "held that a competitor's allegation of diminished market share is sufficient to plead injury in fact under both the UCL and Article III." Opp. 12 (citing cases). The Court recognizes that a competitor's allegation of diminished market share can be sufficient to plead injury in fact under both the UCL and Article III, and GFI's cited cases stand for that proposition. The cases GFI cites do not, however, involve a competitor's UCL claim based solely on a contract to which that competitor was not a party. *See, e.g., Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-CV-01370-EJD, 2015 WL 8028294, at *6 (N.D. Cal. Dec. 7, 2015) (UCL claims based on allegations that Facebook "encouraged others to use [plaintiff's] confidential information by revealing it

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
10

through OpenCompute"); *LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*, No. 18-CV-02573-YGR, 2019 WL 160335, at *12 (N.D. Cal. Jan. 10, 2019) (UCL claims based on allegations that defendant "deceive[s] Google crawlers and other search engines so that Google will display [defendant's] fabricated and false ratings and reviews on the first page search result"); *AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951, 962 (N.D. Cal. 2014) (UCL claims based on "allegations of a wrongfully denied offer of a business opportunity"); *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1174 (N.D. Cal. 2015) (UCL claims based on allegations that defendants made false representations to actual and potential customers).

Nor does *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 573 (2009) compel a different result. There, former employees of defendant and their new employer, St. Jude, sought an injunction enjoining defendants from, among other things, enforcing non-compete clauses in defendant's contract with the former employee plaintiffs and other employees in California. The Court of Appeals affirmed the district court's finding that St. Jude lacked standing to seek a permanent injunction "that would affect agreements of persons not before the court." *Id.* Finally, in *AMN Healthcare*, the former employee's new employer brought a UCL claim against the former employer for "interfering with [plaintiff's] business relationships with its travel nurses." *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 931 (2018). The trial court granted an injunction and enjoined AMN from using or attempting to enforce any contract or employment agreement which purports to restrain its former employees. *Id.* at *600. The injunction was affirmed on appeal, and the court found that the record supported issuing an injunction. *Id.* Although that case involved a UCL claim and indirectly endorses GFI's position, the Court finds *Western Air Charter* more persuasive given the factual similarities and because *AMN Healthcare* did not involve any standing analysis.

Thus, the Court's conclusion with respect to GFI's UCL claim here remains consistent with the general proposition that direct dealings between competitors is not required to state a UCL claim. Accordingly, the Court agrees with the reasoning in *Western Air Charter* and finds that GFI lacks standing to bring its UCL claim to the extent it is based solely on WFG's

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
11

1    agreements with third parties.  To the extent that GFI's UCL claim is also based on its allegation

2    that WFG is "making wrongful threats against WFG agents who join GFI and/or then try to solicit

3    other agents after becoming affiliated with GFI," (FAC ¶ 85) that is separate from, and not based

4    on, the contracts between WFG and its agents, the Court finds that GFI may have standing to bring

5    such a claim.  The Court will permit GFI leave to amend to clarify its UCL claim consistent with

6    this Order.

### 2. 12(b)(6) Standing

WFG separately argues that GFI's UCL claim must be dismissed for lack of statutory standing under Rule 12(b)(6) because it has not sufficiently alleged that it lost money or property as a result of unfair competition.  To establish statutory standing under the UCL, a party must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct. Of Orange Cty.*, 51 Cal. 4th 310, 322 (2011).  "[A] dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction." *Vaughn v. Bay Env't Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009).

Here, GFI alleges that "GFI would have been able to hire more agents, earn more revenues, and increase the value and profits of the company, if not for the illegal Restrictive Covenants in WFG's agreements with its agents, and Defendants' wrongful threats to WFG agents who join GFI and/or subsequently recruited on GFI's behalf."  FAC ¶ 87.  GFI has further alleged that it believes there exists a "large number of WFG agents, especially those that previously were part of Pinnacle, who wish to join GFI" and "many of these agents are fearful of WFG because of Defendants' threats against them if they leave WFG and join GFI." *Id.* ¶ 46.  Taking GFI's allegations as true, and considering the overall context of the FAC, the Court finds GFI has plausibly alleged lost money or property as a result of WFG's conduct at this stage.  However, GFI's UCL claim fails for lack of standing under Rule 12(b)(1) to the extent it is based solely on

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
12

WFG's agreements with third parties. *See supra* Part III(B)(1).

### 3.     Whether GFI's Alleged Injury Is Too Speculative

Finally, WFG argues that GFI's claim fails for the separate reason that GFI's alleged injury in the form of a reduced field of agents who might otherwise work for GFI is impermissibly speculative to establish standing for the broad injunctive relief it seeks. WFG's Reply in Support of Motion to Dismiss ("Reply") 11, ECF No. 35.

A plaintiff seeking injunctive relief bears the burden of showing "that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Institute*, 555 U.S. 448, 493 (2009).

WFG argues that GFI "effectively alleges that it has been harmed by WFGIA's use of provisions in its contracts with agents because these contractual provisions reduce the field of agents who might otherwise work for GFI." Mot. 13. This amounts to a claimed injury that WFG's use of the restrictive covenants "reduces the pool of potential agents from which it can contract." *Id.* WFG also argues that the FAC's "dependence on speculation regarding the motivation of third-party agents is fatal to its ability to plausibly allege causation." *Id.* at 14.

WFG urges the Court to follow *St. Jude Med. S.C., Inc. v. Biosense Webster, Inc.*, 2014 WL 12686383, at *7 (C.D. Cal. Aug. 27, 2014). There, the court found that plaintiff's injury was too speculative where St. Jude pleaded that defendant's use of a non-compete agreement "reduce[d] the pool of potential employees from which it can hire." *Id.* at *7. St. Jude would only be harmed if "[defendant] hired a person potentially employable by St. Jude, that person signed the non-competition agreement, St. Jude decided to hire the person, the person was willing to leave [defendant] to work for St. Jude, [defendant] chose to enforce the non-competition agreement, and the circumstances of contracting and enforcement were such that the agreement was invalid under the applicable state's laws." *Id.* Thus, the court concluded that the claimed injury was too speculative. Here, there are fewer hypothetical leaps GFI must make to establish its

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
13

claimed injury. Under GFI's theory, it is currently being harmed because existing or former WFG agents wish to join GFI but cannot because of WFG's actions. Unlike in *St. Jude* where plaintiff would only be harmed if defendant hypothetically "hired a person potentially employable by [plaintiff]," and that person hypothetically "was willing to leave [defendant] to work for" plaintiff, here, GFI alleges that it is aware of WFG agents who want to leave WFG to work for GFI but are afraid to do so. Although this could amount to a "reduced pool of potential employees" theory like *St. Jude*, the Court finds GFI's allegations less speculative than those in *St. Jude* given the full context of the FAC.

Again taking GFI's allegations as true, particularly that GFI is aware of WFG agents "who wish to join GFI" but are choosing not to "because of" WFG's Restrictive Covenants and purported threats, the Court declines to find that GFI's allegations are too speculative to state an injury for the injunctive relief it seeks.

## IV.   CONCLUSION

For the foregoing reasons, WFG's Motion is GRANTED. GFI's third cause of action for tortious interference with prospective economic advantage is DISMISSED WITH LEAVE TO AMEND. GFI's fourth cause of action for violation of the UCL based on WFG's agreements with third parties is DISMISSED WITH LEAVE TO AMEND. GFI is granted leave to amend to its UCL claim to the extent it can do so consistent with this Order. Any amended UCL claim must include allegations that are separate from, and not based on, the contracts between WFG and its agents.

Any amended complaint must be filed within 21 days of this Order.

**IT IS SO ORDERED.**

Dated: July 19, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
14