UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SANDRA OLSON, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>WORLD FINANCIAL GROUP INSURANCE AGENCY, LLC,<br><br>    Defendant. | Case No. 24-cv-00477-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: ECF No. 94 |

Before the Court is Defendant World Financial Group Insurance Agency, LLC's ("WFG" or "WFGIA") motion to dismiss Plaintiff Global Financial Impact's ("GFI") second amended complaint (ECF No. 81 ("SAC")). Motion to Dismiss ("Mot." or "Motion"), ECF No. 94.

For the reasons set forth below, the Court GRANTS WFG's Motion.

**I.     BACKGROUND**

The Court has outlined the factual background of this matter (and the related cases) in several orders, including in its order granting WFG's motion to dismiss GFI's original complaint. *See* Order Granting WFG's Motion to Dismiss ("MTD Order"), ECF No. 57. Broadly speaking, this case involves claims by Sandra Olson and her company, GFI, against WFG for WFG's alleged anti-competitive actions. Both companies are involved in selling life insurance and financial products. SAC ¶¶ 9, 38–39. After leaving WFG, Ms. Olson and her husband, Eric Olson, started their own competing business, GFI. *Id.* ¶¶ 38–39. Ms. Olson and GFI allege that WFG has suppressed their ability to compete, including by threatening personnel, interfering with GFI's contracts, and more generally, inhibiting GFI's ability to recruit agents from WFG. *See,*

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
1

*e.g.*, *id.* ¶ 40. WFG denies the allegations and has separately brought claims against the Olsons and GFI. *See World Fin. Grp. Ins. Agency, LLC v. Olson et al*, No. 24-cv-00480-EJD (N.D. Cal.), ECF No. 1.

In the Court's MTD Order, the Court dismissed GFI's claim for tortious interference with prospective economic advantage for failure to state a claim and GFI's claim for violation of UCL for lack of standing. Ms. Olson and GFI filed an amended complaint, and GFI now asserts two claims against WFG: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof Code §§ 17200 et seq. and tortious interference with contract. SAC ¶¶ 112–122; 127–134. WFG has moved to dismiss both claims against it brought by GFI. *See generally* Mot.

## II. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While plaintiffs must allege "more than a sheer possibility that a defendant has acted unlawfully," the plausibility standard "is not akin to a probability requirement." *Id.*

For purposes of ruling on a Rule 12(b)(6) motion, the Court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not, however, "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). The Court may also "look beyond the plaintiff's complaint to matters of public record" without converting

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
2

1   the Rule 12(b)(6) motion into a motion for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128,
2   1129 (9th Cir. 1995).

3   To contest a plaintiff's showing of subject matter jurisdiction, a defendant may file a Rule
4   12(b)(1) motion. Fed. R. Civ. P. 12(b)(1). A defendant may challenge jurisdiction "facially" by
5   arguing the complaint "on its face" lacks jurisdiction or "factually" by presenting extrinsic
6   evidence demonstrating the lack of jurisdiction on the facts of the case. *Wolfe v. Strankman*, 392
7   F.3d 358, 362 (9th Cir. 2004); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.
8   2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are
9   insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the
10  challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal
11  jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

12  In resolving a factual attack on jurisdiction, the Court may review evidence beyond the
13  complaint without converting the motion to dismiss into a motion for summary judgment. *Id.*
14  (citing *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039
15  n.2 (9th Cir. 2003)). While the Court may consider evidence outside of the pleadings to resolve a
16  "factual" Rule 12(b)(1) motion, "a [j]urisdictional finding of genuinely disputed facts is
17  inappropriate when the jurisdictional issue and substantive issues are so intertwined that the
18  question of jurisdiction is dependent on the resolution of factual issues going to the merits of an
19  action." *Safe Air for Everyone*, 373 F.3d at 1039 n.3 (citing *Sun Valley Gasoline, Inc. v. Ernst
20  Enters., Inc.*, 711 F.2d 138, 140 (9th Cir. 1983)) (internal quotation marks omitted).

21  **III.   DISCUSSION**
22  WFG moves to dismiss GFI's two claims. The Court addresses each below.
23  **A.     UCL**
24  WFG argues GFI's UCL claim should be dismissed because GFI lacks standing to pursue
25  the injunctive relief it requests, and even if it did have standing, GFI fails to state a claim under
26  any of the three UCL prongs.
27  First, as to standing, the Court previously held that GFI lacked standing to bring its UCL
28  Case No.: 24-cv-00477-EJD
    ORDER GRANTING MOTION TO DISMISS
    3

claim to the extent that claim was "based solely on WFG's agreements with third parties." MTD Order 11–12. The Court indicated that GFI "may have standing" to bring a UCL claim if that claim was based on its allegation that WFG is "making wrongful threats against WFG agents who join GFI and/or then try to solicit other agents after becoming affiliated with GFI." *Id.* at 12. As the Court explained, that allegation could be separate from, and not based on, the contracts between WFG and its agents. *Id.* GFI has since clarified its UCL claim. GFI now alleges its own employees "have expressed concerns and fear of facing retaliation from WFG if they communicate with or attempt to recruit any current or former WFG agents" (SAC ¶ 60), and WFG has "threatened to terminate (and in many cases terminated) the spouse of any agent that moves to GFI" (*id.* ¶ 57). These allegations are separate from, and not based on, contracts between WFG and its agents. GFI has thus established it has standing to pursue its UCL claim.

Next, WFG contends that GFI's UCL claim must nonetheless be dismissed for failure to state a claim. The UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200. GFI asserts WFG's conduct is both unlawful and unfair under the UCL.

Unlawful prong. Both parties acknowledge that "[v]irtually any state, federal or local law can serve as the predicate for an action under" the "unlawful" prong of the UCL." *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (Cal. Ct. App. 2002). GFI identifies the following conduct it contends is sufficient to state a UCL claim: (1) WFG interfered with GFI's relationships; (2) WFG conspired to and unlawfully obtained unauthorized access to Mr. Olson's email; (3) WFG wrongfully terminated spouses of former WFG agents; (4) WFG endorsed the filing of baseless nuisance suits; and (5) WFG used its Restrictive Covenant to prevent GFI from recruiting WFG workers. *See* Opp. 10–12. The Court rejects GFI's first category of conduct because "a UCL violation brought under the 'unlawful' prong may not be predicated on common law violations alone." *Gill v. Marsh USA, Inc.*, No. 24-cv-02366-RS, 2024 WL 3463351, at *6 (N.D. Cal. July 18, 2024) (citing *Foundry IV Inc. v. Hard Carry Gaming Inc.*, No. CV 23-2690-KK-MARx, 2024 WL 211010 at *6–7 (C. D. Cal. Jan. 3, 2024) (collecting

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
4

1   cases)). Regarding the second category of alleged unlawful conduct, GFI argues that "WFG
2   conspired to and did unlawfully obtain unauthorized access to Mr. Olson's email" but fails to cite
3   any supporting allegations in the SAC. Opp. 10–11. Assuming GFI is referring to paragraph 78,
4   that paragraph alleges that WFG "ask[ed] the Olsons' former personal assistant, Darren Perez, to
5   obtain information" from the Olsons' email accounts without authorization. SAC ¶ 78. WFG
6   argues this cannot form the basis of GFI's UCL claim because the SAC alleges that independent
7   contractors, not WFG, engaged in this activity. That is, the SAC does not allege WFG
8   "controlled, demanded or otherwise directed the alleged conduct of these individual agents."
9   Mot. 8. But paragraph 78 explicitly alleges that WFG "ask[ed]" Mr. Perez to access the Olsons'
10  email account without authorization. *See Bottoni v. Sallie Mae, Inc*, 2011 WL 2293226, at *7
11  (N.D. Cal. Jun 8, 2011) (UCL claim survived motion to dismiss where complaint alleged that
12  Sallie Mae "controls" the debt collectors and "directs" the debt collectors to demand and collect
13  the allegedly illegal collection penalties). Thus, GFI has plausibly alleged WFG personally
14  participated in Mr. Perez's actions regarding the unauthorized email access. WFG's cited cases on
15  this point are therefore unpersuasive. *See* Opp. 8–9 (citing *Emery v. Visa Int'l Serv. Ass'n*, 95
16  Cal.App.4th 952, 960 (Ct. App. 2002); *People v. Toomey*, 157 Cal.App.3d 1, 14 (Ct. App. 1984)
17  (liability under the UCL "must be predicated on [the defendant's] personal participation in the
18  unlawful practices," and not some form of vicarious liability); *Friedman v. Mercedes Benz USA
19  LLC*, No. CV 12-7204, 2013 WL 8336127 at *6 (C.D. Cal. June 12, 2013)).
20          Still, GFI's UCL claim based on the unlawful prong fails for a separate reason. GFI has
21  not identified any *law*—federal, state, or local—that serves as the predicate for its claim. The
22  Court presumes that obtaining unauthorized access to email could violate some law, but the Court
23  cannot assess the sufficiency of GFI's claims without more information regarding which law (or
24  laws) GFI claims was (or were) violated. *Pinnacle Ventures LLC v. Bertelsmann Educ. Servs.
25  LLC*, No. 18-CV-03412-BLF, 2020 WL 1082764, at *5 (N.D. Cal. Mar. 6, 2020) (dismissing UCL
26  claim because "[defendant] has not pled facts showing a violation of law by [plaintiff]"). GFI's
27  third (WFG wrongfully terminated spouses of former WFG agents) and fourth (WFG endorsed the

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
5

filing of baseless nuisance suits) categories of conduct fail for the same reason. GFI must identify which law it contends this conduct violates. Finally, as to the fifth category of conduct, GFI alleges that WFG "is using its illegal Restrictive Covenant to prevent GFI from recruiting WFG workers" and "to intimidate WFG workers from wanting to leave." Opp. 11. In support, GFI does identify a law: Cal. Bus. & Prof. Code § 16600. Opp. 13. However, these allegations are based on provisions in the agent agreements to which GFI is not party. As the Court previously held, GFI lacks standing to pursue a UCL claim based solely on the Restrictive Covenant in agreements between agents and WFG. *See* MTD Order 11–12.

Accordingly, GFI has failed to state a claim for violation of the UCL based on the unlawful prong.

Unfair prong. A competitor's conduct or practice is unfair when it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1090 (N.D. Cal. 2019) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186–87 (1999)). A practice "may be deemed unfair even if not specifically proscribed by some other law." *Cal. Med. Assn. v. Aetna Health of Cal. Inc.*, 14 Cal. 5th 1075, 1085 (2023).

GFI alleges that the same conduct identified above—stealing confidential information, terminating employees, and threatening the Restrictive Covenant—"significantly threatens or harms competition." Opp. 14. WFG argues that GFI fails to meet the pleading standard because the SAC lacks facts suggesting harm to "competition" in the broad sense of the word. Mot. 10. The Supreme Court of California has stated that "any finding of unfairness to competitors under [the UCL] must be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech*, 20 Cal. 4th at 186. And claims resulting from "a direct competitor's 'unfair' act or practice" requires "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
6

1  competition." *Id.* The "antitrust laws' prohibitions focus on protecting the competitive process
2  and not on the success or failure of individual competitors." *Cascade Health Sols. v.*
3  *PeaceHealth*, 515 F.3d 883, 902 (9th Cir. 2008).

4  While Plaintiffs' primary theory is that WFG's actions have chilled, and continues to chill,
5  competition *to GFI* (*see* SAC 7 (Mrs. Olson "created GFI to compete with WFG, but she has been
6  impeded by WFG's Restrictive Covenant and WFG's lawsuit against her")), the SAC also alleges
7  injury to competition more broadly. *See* SAC ¶¶ 42 (contract provisions "chill[] any lay person
8  reading it from engaging in legitimate competition"), 48 (inclusion of the Restrictive Covenant
9  "has chilled competition by limiting mobility among WFG's current and former agents in
10  California"). But, again, allegations based on the Restrictive Covenant in agent agreements cannot
11  form the basis of the UCL claim because GFI is not a party to those agreements. GFI also refers
12  to (without citing any specific allegations in the SAC) WFG's alleged actions in stealing
13  confidential information and terminating employees. Those allegations appear to relate solely to
14  GFI's harm and not harm to competition more broadly. *See* SAC ¶¶ 57 ("WFG has on multiple
15  occasions threatened to terminate (and in many cases terminated) the spouse of any agent that
16  moves to GFI"); 78 ("WFG obtained non-public information about GFI's provider relationships
17  for purposes of interfering with those relationships"). Unlike the complaint in *Diva Limousine*, a
18  case GFI relies on, the SAC here has not alleged conduct by WFG that "violates the policy or
19  spirit of [an antitrust] law[] because its effects are comparable to or the same as a violation of the
20  law, or otherwise significantly threatens or harms competition." *Diva Limousine*, 392 F. Supp. 3d
21  at 1091 (UCL claim sufficiently plead where plaintiff "alleged that Uber's misclassification of
22  drivers allows it to shirk its legal obligations under the California Labor Code and Wage Orders
23  issued by the California Industrial Welfare Commission to provide adequate pay and benefits to its
24  drivers").

25  Accordingly, the Court grants WFG's motion to dismiss GFI's claim under the "unlawful"
26  and "unfair" prong of the UCL.

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
7

### B.   Tortious Interference with Contract

GFI alleges that WFG tortiously interfered with GFI's insurance provider contracts, including by inducing Mr. Perez to access Mr. Olson's emails. SAC ¶¶ 78, 80–82. WFG contends GFI's tortious interference with contract claim fails for three reasons: (1) WFG cannot be held liable for torts committed by its independent contractors, (2) GFI has not alleged any independently wrongful conduct, and (3) GFI has not established WFG's actual knowledge of the contracts before they were terminated.

Tortious interference with contract requires "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020).

GFI alleges interference with at-will insurance provider contracts. Mot. 13; *see also* Opp. 2 (not disputing the relevant contracts are at-will). To assert a claim for interference with an at-will contract, "the plaintiff must allege that the defendant engaged in an independently wrongful act." *Ixchel*, 9 Cal. 1130 at 1148. "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1142 (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)).

WFG argues GFI's tortious interference claim fails because GFI has not alleged any independently wrongful act. Mot. 13. GFI responds that it has alleged WFG "ask[ed]" Mr. Perez to obtain confidential information from email accounts from the Olsons. Opp. 6 (citing SAC ¶ 78). As above, GFI has not explained which constitutional, statutory, regulatory, common law, or other legal standard WFG violated by instructing Mr. Perez to obtain confidential information from the Olsons. *Cf. Korea Supply*, 29 Cal. 4th at 1159 (plaintiff satisfied the independent wrongfulness requirement by alleging defendant engaged in bribery and offered sexual favors in violation of the Foreign Corrupt Practices Act). Should GFI amend its complaint to state why this

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS

8

conduct is unlawful, the Court can better assess whether GFI has sufficiently alleged the wrongful act required to state its tortious interference claim.

Because GFI has failed to sufficiently allege an independently wrongful act, its tortious interference with contract claim fails, and the Court need not reach WFG's remaining arguments. However, the Court observes that GFI appears to have sufficiently alleged WFG had knowledge of the contractual relationships between GFI and NLG, Athene, and F&G. *See* SAC ¶¶ 79 ("WFG has been tracking and monitoring contracts with insurance providers and communicating with insurance providers"), 129 ("Defendants knew of the existence of those contracts and/or contractual relationships between GFI and NLG, Athene, F&G and other providers"). The Court also rejects WFG's argument that it cannot be held liable for torts committed by its independent contractors because GFI has "alleg[ed] facts from which an inference can be drawn that [WFG] had the power to control the general" conduct of its agents and executives. *Hellum v. Breyer*, 194 Cal. App. 4th 1300, 1317 (2011) (quotations omitted); *see e.g.*, SAC ¶¶ 78 ("WFG obtained non-public information about GFI's provider relationships for purposes of interfering with those relationships"), 130 (WFG "induced a disruption or breach of the contractual relationship" by "pressuring insurance providers to cancel GFI's contracts").

## IV.  CONCLUSION

For the reasons stated above, WFG's motion to dismiss GFI's claims is GRANTED. Because the deficiencies can be cured, and GFI has not had an opportunity to amend its tortious interference claim, GFI is permitted leave to amend. Any amended complaint must be filed within 21 days of this order. Should GFI amend the deficiencies identified in this order, the Court expects GFI's claims may proceed. The Court encourages the parties to confer to avoid the need for further motion practice regarding any amended complaint.

**IT IS SO ORDERED.**

Dated: November 4, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 24-cv-00477-EJD
ORDER GRANTING MOTION TO DISMISS
9