UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SANDRA OLSON, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WORLD FINANCIAL GROUP INSURANCE AGENCY, LLC,<br><br>    Defendant. | Case No.  24-cv-00477-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DAJUAN COFIELD'S MOTION TO DISMISS**<br><br>Re: ECF No. 153 |

Before the Court is Defendant Dajuan Cofield's motion to dismiss Plaintiff World Financial Group Insurance Agency's ("WFG," "WFGIA," or "Plaintiff") claims against him in WFG's First Amended Complaint (No. 24-cv-0277, ECF No. 72, "FAC").[1] Dajuan Cofield's Motion to Dismiss, No. 24-cv-00480-EJD, ECF No. 153 ("Mot." or "Motion").

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Mr. Cofield's Motion.

**I.    BACKGROUND**

The parties are familiar with the history of litigation between WFG, Eric Olson, and Sandra Olson. For purposes of this Motion, the Court will summarize the allegations relevant to Mr. Cofield.

Mr. Cofield was an insurance agent affiliated with WFG until January 24, 2024.

---

[1] On July 22, 2024, the Court consolidated three pending cases involving the parties. *See* No. 24-cv-00477, ECF No. 58 (consolidating present case with No. 24-cv-00477 and No. 24-cv-00281). The present Motion was brought before the cases were consolidated. The Court refers to docket entries in the other cases prior to consolidation where appropriate to avoid confusion.

FAC ¶ 14. When WFG brings on an insurance agent, it requires the agent to sign the Agent Agreement (the "Agreement"). *Id.* ¶ 39. Mr. Cofield signed his annual Agreement on September 26, 2022. *Id.* ¶ 53. The relevant provisions of the Agreement are identified below:

> The Non-Solicitation Provision.
>
> Except as prohibited by law, during the period that Agent is an Agent of WFG and for a period of two (2) years following the termination of this Agreement for any reason, Agent shall not, either individually or in partnership or jointly or in conjunction with any other person or entity, as principal, agent, consultant, contractor, employer, employee or in any other manner, directly or indirectly, solicit, induce or entice away or in any other manner persuade or attempt to persuade any individual who is a current agent of WFG and with whom the Agent had business contact with on behalf of WFG or its affiliated or related entities, to terminate or alter their agent relationship with WFG to join a competing organization. This non-recruitment restriction is limited and only applies with respect to any recruitment of an agent that resided in or engaged in business activities in the geographic area within fifty (50) miles of the location of the Agent's office(s) during the eighteen (18) month period preceding the recruitment. This provision survives the termination of this Agreement.

Agreement § 2.15.

> The Confidentiality Provision.
>
> Agent will not use, disseminate or reveal, other than on behalf of WFG as authorized by WFG or the Product Providers, any Confidential Information or Trade Secret of WFG or of the Product Providers, which Agent has or hereafter receives. Agent agrees that immediately upon the termination of this Agreement, Agent will return all documents, files and lists containing any Confidential Information or Trade Secret to WFG and the same shall not be copied or duplicated.

Agreement § 2.16.

> The Non-Disparagement Provision.
>
> Agent shall not do anything that will damage the business, good name or reputation of WFG, Affiliated Companies and/or their respective officers, directors, and employees.

Agreement § 2.17.

WFG alleges Mr. Cofield participated in an ongoing scheme with the co-Defendants by attempting to recruit WFG's agents to join GFI through a tactic dubbed the "Anchor Leg

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
2

strategy." *Id.* ¶ 2. The Anchor Leg strategy involved Mr. Cofield and the other Defendants recruiting the spouse of a current WFG agent to join GFI, while the WFG agent remains at WFG. The scheme provided that the spouse at WFG would eventually resign from WFG and later feed that business to GFI. *Id.* By early January 2024, Mr. Cofield and the other Defendants began to set up secret meetings with their friends and colleagues, who were currently under contract with WFG, to encourage them to join GFI. *Id.* ¶ 94.

As part of this scheme, Mr. Cofield launched a social media campaign against WFG, claiming in a video that WFG left a widow without any income after her husband, a WFG agent, died suddenly. *Id.* ¶ 101. WFG alleges Mr. Cofield posted this video with the "clear purpose of spreading claims" about WFG "to entice other agents to leave" the company. *Id.* ¶ 102. WFG also alleges Mr. Cofield wrote false statements in group chats and shared WFG's confidential contractual information to entice agents to leave WFG for GFI. *Id.* ¶¶ 191–201, 236–42.

Based on this conduct, WFG brought seven counts against Mr. Cofield and the other Defendants: breach of contract, tortious inference, civil conspiracy, fraud, unjust enrichment, conversion, and violation of California Business and Professions Code Section 17200 ("UCL").

Mr. Cofield moved to dismiss all claims against him on May 16, 2024.[2] The motion is fully briefed. *See* WFG's Opposition to Motion to Dismiss ("Opp."), ECF No. 176; Cofield's Reply in Support of Motion to Dismiss ("Reply"), ECF No. 182.

## II. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

---

[2] Mr. Cofield's motion was untimely under the Federal Rules of Civil Procedure. *See* Order to Show Cause, ECF No. 210. The Court will not strike Mr. Cofield's belated motion but cautions Mr. Cofield and his counsel that the Court will not accept belated filings in this case going forward. WFG's administrative motion for leave to file a response to Roy Crumity's declaration is DENIED AS MOOT. *See* Case No. 24-cv-00477, ECF No. 76.

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
3

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While plaintiffs must allege "more than a sheer possibility that a defendant has acted unlawfully," the plausibility standard "is not akin to a probability requirement." *Id.*

For purposes of ruling on a Rule 12(b)(6) motion, the Court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not, however, "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). The Court may also "look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 (9th Cir. 1995).

## III. DISCUSSION

Dajuan Cofield moves to dismiss all claims against him for failure to state a claim under Rule 12(b)(6). The Court addresses each cause of action below.

### A. Breach of Contract—First Cause of Action

Mr. Cofield first moves to dismiss WFG's breach of contract claim under Rule 12(b)(6) because the claim rests on enforcing a contract that violates California law. Mot. 4. Mr. Cofield contends that all three relevant provisions of the Agreement separately violate Section 16600. WFG responds that the Confidentiality Provision and the Non-Disparagement Provision are both independently valid, and the Non-Solicitation Provision is still actionable for breaches that occurred during Mr. Cofield's engagement with WFG. Opp. 7–10.

#### 1. Section 2.15—the Non-Solicitation Provision

Turning first to the Non-Solicitation Provision, for the reasons explained in its TRO Order,

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
4

the Court will evaluate whether the relevant provisions are void under the *Edwards* framework. *See* No. 24-cv-00480, ECF No. 64 ("TRO Order") 12–16. The Court briefly restates its findings here.[3]

Whether WFG has stated a claim for breach of the Non-Solicitation Provision involves the application of § 16600 to the Non-Solicitation Provision. Section 16600 provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600(a). Section 16600 "shall be read broadly, in accordance with Edwards v. Arthur Andersen LLP (2008) 44 Cal.4th 937, to void the application of any noncompete agreement in an employment context, or any noncompete clause in an employment contract, no matter how narrowly tailored, that does not satisfy an exception in this chapter." *Id.* at (b)(1). *Edwards* held that "Section 16600 is unambiguous, and if the Legislature intended the statute to apply only to restraints that were unreasonable or overbroad, it could have included language to that effect." *Edwards*, 44 Cal. 4th at 950 (rejecting contention that court "should adopt a narrow-restraint exception to section 16600").

Prior to *Edwards*, *Loral Corp. v. Moyes* found that an agreement which was more akin to "a restraint on solicitation of customers or on disclosure of confidential information" than a noncompete agreement was upheld. 174 Cal. App. 3d 268, 276 (1985) ("*Loral*"). The court reasoned that the agreement only slightly affected the plaintiff's employees because they were not hampered from seeking employment with defendant's new employer; nor did the agreement prevent the plaintiff's employee from contacting the contracting defendant. The only option employees lost was the option of being contacted by the defendant first. *Id.* at 279–80. The court further reasoned that "[t]he restriction presumably was sought by plaintiffs in order to maintain a stable work force and enable the employer to remain in business." *Id.* at 280. Thus, since the

---

[3] The Court observes that Mr. Cofield relies heavily on the Court's ruling in denying WFG's motion for temporary restraining order. That order evaluated the relevant provisions under a different standard and with the evidence before the Court at that time. To the extent that the Court's reasoning in its TRO Order is applicable here, the Court will so state. With that in mind, the Court will proceed to evaluate the present motion under Rule 12(b)(6).

court found that the noninterference agreement "ha[d] the apparent impact of limiting [defendant's] business practices in a small way in order to promote [the employer's] business," it did not find the agreement to be void on its face under section 16600. *Id.*

Courts have considered the impact of the *Edwards* holding on *Loral*. For instance, *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.* expressly stated that it "doubt[s] the continuing viability of [*Loral*] post-*Edwards*" but nevertheless evaluated the agreement at issue using the *Loral* reasonableness standard. 28 Cal. App. 5th 923, 939 (2018). Other courts, in evaluating the two cases vis-à-vis, have similarly questioned whether non-solicitation agreements permitted under *Loral* remain so following *Edwards*. For example, *Race Winning Brands, Inc. v. Gearhart* evaluated a confidentiality agreement that stated plaintiff must not, "for one year following the termination of [his] employment ... directly or indirectly through another person or entity, induce or attempt to induce any employee of [plaintiff] to suspend, decrease or terminate their employment or otherwise interfere with the relationship ...." No. 22-CV-1446-FWS-DFM, 2023 WL 4681539, at *9 (C.D. Cal. Apr. 21, 2023). This is nearly identical to the Non-Solicitation Provision in the Agreement here. The court explained that, before *Ixchel*, "several district courts considering *AMN* followed its interpretation that § 16600 broadly invalidates non-solicitation agreements imposed on terminated employees. *Id.* (citing *Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 827–28 (N.D. Ill. 2019) (finding *AMN*'s interpretation of *Edwards* persuasive notwithstanding *Loral* and noting some decisions issued after *Edwards* but before *AMN* upheld non-solicitation agreements)). The court held that the non-solicitation clause "contained in an employment agreement" which "prevents Defendant from soliciting Plaintiff's other employees to work with Defendant for one year following his termination" was void under section 16600 absent a statutory exception. *Id.* at *11; *see also Parsable, Inc. v. Landreth*, No. 22-CV-01741-CRB, 2022 WL 19692034, at *3 (N.D. Cal. Aug. 5, 2022) (holding non-solicitation clause "void and unenforceable under California law" even where employee was not in business of recruiting because "[a] non-solicitation clause works a restraint on any former employee by restricting who may work alongside them") (quotations omitted); *Minnesota Life Ins. Co. v. Link-Allen & Assocs.*,

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
6

*Inc.*, No. 20-CV-06082-RS, 2021 WL 9860789, at *4 (N.D. Cal. Jan. 22, 2021) (explaining that California's protection under section 16600 "brooks no exception when it comes to non-solicitation clauses" and collecting cases); *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 852 (N.D. Cal. 2019), *modified in part*, No. 18-CV-07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) (finding non-solicitation provision void under section 16600 and rejecting argument that *AMN* departed from *Loral*).

As explained in the TRO Order, the Court finds that *Edwards*, at a minimum, cast doubt on *Loral*. *See* TRO Order 12–16. Moreover, Mr. Cofield has stated that he is in the business of recruiting (*see* Mot. 8), so the Non-Solicitation Provision would have a negative impact on his business. *See AMN Healthcare*, 28 Cal. App. 5th at 939; *see also NuLife Ventures v. Avacen*, No. 20-cv-2019-BAS-KSC, 2020 WL 7318122, at *11 (S.D. Cal. Dec. 11, 2020) (finding plaintiff failed to demonstrate a probability of prevailing on the merits of its breach of contract claim where the contractual provisions at issue "restrict [the independent contractor's] ability to practice their sales profession in the MLM industry, which rely on a sales agent's recruitment of new sales agents"). If enforced, the Non-Solicitation Provision would restrain Mr. Cofield "from engaging in their chosen profession." *AMN Healthcare*, 28 Cal. App. at 939. Thus, the Court concludes that the Non-Solicitation Provision is void under section 16600.

WFG argues that the *Edwards* holding and analysis "only govern post-termination activity when reviewing the enforceability of restrict covenants," and it "does not void covenants not to solicit while the worker is still engaged with the company." Opp. 8. In support, WFG cites *Techno Lite v. Emcod*, which explained that section 16600 "does not affect limitations on an employee's conduct or duties *while employed*." 44 Cal. App. 5th 462, 471 (2020) (emphasis in original). But that case is distinguishable because it involved allegations of fraud based on a promise not to compete with defendant's employer while defendant was still employed with the employer. *Id.* at 474. The court did not consider the impact of an agreement not to compete during employment *and for a period following* the termination of the agreement.

Even if *Edwards* does not void covenants not to solicit while the worker is still engaged

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
7

with the company—as WFG contends—that is not the covenant at issue here. The Non-Solicitation Provision here involves an agreement not to compete "during the period that Agent is an Agent of WFG *and for a period of two (2) years following* the termination of this Agreement." Agreement § 2.15 (emphasis added). WFG's argument that the Non-Solicitation Provision is not invalid because it prohibits solicitation during employment "ignores the broad wording" of the Non-Solicitation Provision. *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 578 (2009). Because the Non-Solicitation Provision "at issue here goes well beyond prohibiting active solicitation by prohibiting departing employees from" soliciting WFG agents for a period of two years following the termination of the Agreement, the provision is not exempt from section 16600. *Id.* at 578–79.

Moreover, the California Court of Appeal in *AMN Healthcare* tested "broadly worded provisions preventing [employees], for a period of at least one year after termination of employment ..., from either directly or indirectly soliciting or recruiting, or causing others to solicit or induce, any employee of" the plaintiff firm. 28 Cal. App. 5th at 936. As here, the language of the non-solicitation provision at issue in *AMN* proscribed solicitation both "during Employee's employment with the Company" *and* "for a period of [one year or] eighteen months after the termination of the employment relationship with the Company." *Id.* at 929. Even with the included prohibition on soliciting during the employee's employment, the *AMN* court "conclude[d] that the nonsolicitation of employee provision [at issue was] ... void under section 16600." *Id.* at 936; *see also W. Air Charter, Inc. v. Schembari*, No. 17-CV-00420-ABK-SX, 2017 WL 7240775, at *1 (C.D. Cal. Dec. 14, 2017) (nonsolicitation provision invalidated that included prohibition on soliciting both "during" or "at any time after Employee's employment").

The Court also rejects WFG's suggestion that the Non-Solicitation Provision can be reformed to apply only to pre-termination misconduct. Opp. 12. "Any attempt to construe the [Non-Solicitation Provision] in such a manner as to make [it] lawful would not be reforming the contract to correct a mistake of the parties but rather to save a statutorily proscribed and void provision." *Dowell*, 179 Cal. App. 4th at 579; *see also Kolani v. Gluska*, 64 Cal. App. 4th 402,

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
8

407, 75 Cal. Rptr. 2d 257 (1998) (affirming trial court's decision "not [to] rewrite the broad covenant not to compete into a narrow bar" because "the policy of [Section 16600] would be undermined by doing so").[4]

Because the Court finds that the Non-Solicitation Provision is subject to *Edwards* and void under section 16600, the Non-Solicitation Provision cannot generate a cognizable breach of contract claim. Accordingly, the Court GRANTS Mr. Cofield's motion to dismiss WFG's claim against him arising from breach of the Non-Solicitation Provision without leave to amend.

### 2. Section 2.16—The Confidentiality Provision

Mr. Cofield contends that the Confidentiality Provision is separately void for the same reasons he contends the Nonsolicitation Provision is void. Mot. 8–9. The Confidentiality Provision provides "Agent will not use, disseminate or reveal, other than on behalf of WFG as authorized by WFG or the Product Providers, any Confidential Information or Trade Secret of WFG or of the Product Providers, which Agent has or hereafter receives." Agreement § 2.16. Confidential Information is defined as:

> Any and all Personally Identifiable Information or confidential and proprietary records, data or information created by or on behalf of, or belonging to, WFG and now or hereafter acquired by, made known or disclosed to the Agent or any Assistant which has value to, and is not generally known by, competitors or potential competitors of WFG, and includes but is not limited to hierarchy lists and Personally Identifiable Information deemed to be confidential by applicable federal, state, commonwealth and/or local laws and list(s) of WFG agents, including their identities and contact information. Confidential information does not include information which becomes generally available to the public other than as a result of disclosure by the Agent, any Assistant or any member of

---

[4] Mr. Cofield suggests that if the Court finds one provision of the Agreement void, the Court should find the entire Agreement void. *See* Mot. 10–11. The cases cited by Mr. Cofield involve courts declining to reform noncompete or nonsolicitation *clauses*—they do not involve courts refusing to reform entire contracts that include a void clause. *See Dowell*, 179 Cal. App. 4th at 579 (affirming trial court's decision to decline to reform the void noncompete and nonsolicitation *clauses* within the broader agreements); *Kolani*, 64 Cal. App. 4th at 408 (same); *Global Trim Sales, Inc. v. Checkpoint Sys. UK Ltd.*, No. SACV 12-1314 JLS (RNBx), 2014 WL 12690629, at *6 (C.D. Cal. Sep. 17, 2014) (same). The Court declines to reform the void Nonsolitication Provision, and the Court's conclusion with respect to the Nonsolicitation Provision does not disturb the other provisions in the Agreement.

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
9

WFG's network of contractually affiliated agents.

*Id.* § 1.8.

Mr. Cofield argues that this provision is "even broader" than the Nonsolicitation Provision because it would preclude agents "from saving their colleagues name and number as contact information." Mot. 8.

The Court finds that the Confidentiality Provision, while broad, is not so broad to be void under section 16600. Mr. Cofield's cited cases do not change the Court's conclusion. *Dowell* evaluated an agreement that included a covenant not to compete which explicitly prevented the employee from rendering services based on the employee's application of confidential information. *Dowell*, 179 Cal. App. 4th at 568. In other words, the covenant not to compete incorporated the confidentiality restriction; the noncompete and nonsolicitation clauses were "tethered" to the use of confidential information. Here, the Confidentiality Provision is separate from the Nonsolicitation Provision, and the Nonsolicitation Provision does not incorporate or rely on an interpretation of the Confidentiality Provision.

Mr. Cofield also cites *W. Air Charter*. Mot. 9 (citing *W. Air Charter*, 2017 WL 7240775, at *1). The agreement in that case involved a provision, titled "Restrictions on Competition," that, like the agreement in *Dowell*, also combined the nonsolicitation terms with the confidentiality terms. *Id.* at *1. The Restrictions on Competition provision prevented the employee from soliciting any past, current, or prospective clients "to the extent that such solicitation involves acquisition, disclosure, or use of Company's Confidential Information." *Id.* The provision restricted employees from "keep[ing] or us[ing]" confidential information "for the purpose of soliciting business for Employee's own business interests" and provided that employees would "never use Confidential Information to compete with Company, both during and after Employee's employment, in perpetuity." *Id.* "Confidential Information" was "broadly defined" to include "all information that has or could have commercial value or other utility in the business of the Company," and "any information" "related to Company's clients or business partners." *Id.* at *2.

The Confidentiality Provision here differs from those at issue in both *Dowell* and *W. Air*

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
10

*Charter* in that it is a standalone provision not tethered to the Nonsolicitation Provision, and it is more narrow in scope. For instance, the Confidentiality Provision here is tailored to personally identifiable information "deemed to be confidential by applicable federal, state, commonwealth and/or local laws and list(s) of WFG agents, including their identities and contact information" with an exception for information "which becomes generally available to the public." Agreement § 1.8; *see First-Citizens Bank & Tr. Co. v. HSBC Holdings plc*, No. 23-CV-02483-LB, 2024 WL 115933, at *10 (N.D. Cal. Jan. 10, 2024) (declining to dismiss at pleading stage claim that "d[id] not stand or fall on the non-solicitation provision and instead turn[ed] on misuse of information").

The Court declines to find that the Confidentiality Provision is void under section 16600 and DENIES Mr. Cofield's motion to dismiss WFG's breach of contract claim against him on this basis.

### 3. Section 2.17—the Disparagement Provision

Mr. Cofield next argues that the Disparagement Provision is void as being "even broader" than the other restrictions. Mot. 10. The Disparagement Provision provides that the Agent "shall not do anything that will damage the business, good name or reputation of WFG, Affiliated Companies and/or their respective officers, directors, and employees." Agreement § 2.17.

Mr. Cofield argues that the Nondisparagement Provision is void because it has no expiration and imposes liability for "seemingly any statement Mr. Cofield could make that Plaintiff feels damages its 'good name' regardless of whether it is the truth." Mot. 10.

WFG cites *Parsable*. 2022 WL 19692034. In that case, the court evaluated a separation agreement between employee and his former employer. The employee agreed to "refrain from any disparagement, defamation, libel, or slander" of his employer and "refrain from making, either directly or indirectly, any negative, damaging or otherwise disparaging communication concerning [his employer] or its services to any of the clients of [his employer]," including "any negative, damaging or otherwise disparaging communications on Glassdoor, Indeed, LinkedIn, or any other similar websites, media outlets, newspaper, magazine, forum, or any other distribution channel or other third parties." *Id.* The employer alleged the employee violated the agreement by making

false and disparaging statements. The employee moved to dismiss the complaint, arguing, among other things, that the non-solicitation clause was void and the non-disparagement clause was "an unlawful de facto non-compete clause." *Id.* at *3. The court found that the non-solicitation clause was void under California law, but the non-disparagement clause "appear[ed] to be enforceable, at least in part." *Id.* at *5.

Here, as in *Parsable*, WFG's breach of contract claim based on the Nondisparagement Provision "does not depend upon [Mr. Cofield's] obligation not to make negative comments." *Id.* The FAC, as in *Parsable*, alleges "not only negative comments made by [Defendants], but disparaging ones." *Id.* at *5. For example, the FAC alleges that Mr. Cofield "claimed that WFGIA left a widow without any income after her husband, a WFGIA insurance agent, died suddenly." FAC ¶¶ 101–02. The Court agrees that it need not reach the question of whether the Nondisparagement Provision violates section 16600 "as applied to merely negative comments" because WFG relies on disparaging comments, not solely negative comments, to support its cause of action for breach of the Nondisparagement Provision. *Parsable*, 2022 WL 19692034, at *5.

Accordingly, the Court declines to find that the Nondisparagement Provision is void under section 16600 and DENIES Mr. Cofield's motion to dismiss WFG's breach of contract claim against him on this basis.

### B. Tortious Interference with Contract—Second Cause of Action

Mr. Cofield also moves to dismiss WFG's tortious interference with contract claim because WFG has not plead an independently wrongful act or "any specific resultant disruption to contractual or economic relationships." Mot. 11–12.

"In order to state a claim for tortious interference with a contract, a plaintiff must plead (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (citations omitted). To state a claim for interference with an at-will contract, WFG must also "allege that

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
12

[Mr. Cofield] engaged in an independently wrongful act." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1148 (2020). Because WFG alleges that Mr. Cofield interfered with at-will contracts, it must allege that Mr. Cofield did so through wrongful means. *Id.* at 1162.

Mr. Cofield argues that the only independently wrongful act alleged in the FAC is the use of WFG's "confidential business information about its business structure, insurance agent performance, hierarchy structure, compensation, and agreements with product providers to induce their colleagues to leave WFGIA.'" Mot. 12 (citing FAC ¶ 263). As explained above, *supra* Part III(A)(2), WFG has plausibly pleaded a breach of contract claim based on at least breach of the Confidentiality Provision. WFG alleges that Mr. Cofield, and the other Defendants, "used WFGIA's confidential business information" to "induce their colleagues to leave WFGIA." FAC ¶¶ 260–64. WFG's breach of contract claim and related allegations are sufficient at this stage to plead the independently wrongful act required to state a tortious interference with contract claim.

Mr. Cofield next argues that WFG's tortious interference claim fails because WFG has not pled "any specific resultant disruption to contractual or economic relationships." Mot. 12 (quoting *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1134 (9th Cir. 2015)). The Court agrees. The FAC lacks sufficient specificity regarding which contract was disrupted. The FAC alleges that "[d]ozens of insurance agents have already terminated their agreements with WFGIA and moved to GFI" and "WFGIA continues to lose insurance agents and customers." FAC ¶ 255. The FAC also alleges that Mr. Cofield induced "other insurance agents" to breach their contracts. *Id.* ¶ 262. But these allegations of "generalized disruption of contracts" are insufficient to identify, at a minimum, "the particular contracts" that were interfered with. *Image Online Design, Inc. v. Internet Corp. for Assigned Names & Numbers*, No. CV 12-08968 DDP JCX, 2013 WL 489899, at *9 (C.D. Cal. Feb. 7, 2013); *see also Nat'l Specialty Pharmacy, LLC v. Padhye*, No. 23-CV-04357-PCP, 2024 WL 2206336, at *4 (N.D. Cal. May 16, 2024) (dismissing tortious interference with contract claim that "d[id] not specify what contracts were interfered with").

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
13

WFG argues that, unlike the plaintiff in *Name.Space*, it has alleged that Mr. Cofield and the other Defendants "intentionally disregarded their own contractual obligations when they encouraged other WFGIA insurance agents to breach their own contractual obligations and resign from WFGIA to join GFI." Opp. 15. But that distinction is unavailing because allegations that Mr. Cofield interfered with "other insurance agents[']" contracts (FAC ¶¶ 259, 263) nevertheless lack sufficient specificity regarding which contracts were disrupted.

Accordingly, the Court GRANTS Mr. Cofield's motion to dismiss WFG's tortious interference with contract claim against him. WFG will be permitted leave to amend this claim consistent with the Court's Order.

### C. Fraud—Fourth Cause of Action

Mr. Cofield argues that WFG fails to state a claim for fraud because the allegations lack the requisite specificity for fraud under Rule 9(b). Mot. 13. Under Rule 9(b), WFG "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 815 (N.D. Cal. 2014) (citing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). "To that end, the allegations must contain an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Id.* (quotations omitted).

Specifically, Mr. Cofield contends that WFG's fraud claim does not identify the "times, places, []or specific content" of any false statement. Mot. at 13. WFG responds that the "speaker" of the false statement is any "Target" WFG insurance agent engaged in the Anchor Leg strategy. Opp. 12 (citing FAC ¶¶ 65, 68–69, 220).

The Court finds WFG's fraud allegations lack the requisite specificity. To the extent WFG relies on an agency-principal relationship to support its fraud allegations, that relationship must be plead. *See Union Pac. R.R. Co. v. Hill*, No. 21-CV-03216-BLF, 2021 WL 5964595, at *8 (N.D.

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
14

Cal. Dec. 16, 2021) ("Union Pacific has failed to sufficiently plead a principal-agent relationship that would make Mobile Mini liable for the acts of the Hills and Privette"). The FAC alleges that "GFI was formed to enrich the Olsons and for the unlawful purpose of stealing from WFGIA and its insurance agents." FAC ¶ 78. This allegation, although perhaps alluding to an agency-principal relationship, falls short of alleging an agency-principal relationship such that statements made by the "Target" WFG insurance agents engaged in the Anchor Leg strategy can be attributed to the Olsons—let alone to Mr. Cofield.

Having failed to plead with particularity the details of the false representations, WFG has failed to state a claim for fraud. Accordingly, the Court GRANTS Mr. Cofield's motion to dismiss WFG's fraud claim against him. WFG will be permitted leave to amend this claim consistent with the Court's Order.

### D.   Conversion—Sixth Cause of Action

Mr. Cofield next argues that WFG's conversion claim fails for two reasons: (1) the Restrictive Covenant is void, and (2) it is predicated solely on the alleged taking of confidential information and is therefore preempted by the California Uniform Trade Secret Act ("CUTSA"). Mot. 13–14. Having found that only the Nonsolicitation Provision is void, the Court rejects Mr. Cofield's first argument.

Regarding preemption, "CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'" *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) (quoting Cal. Civ. Code § 3426.7, subds. (a), (b)). CUTSA "preempts common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*, No. 16-CV-03737-JCS, 2017 WL 412524, at *5 (N.D. Cal. Jan. 31, 2017) (internal quotations omitted).

Mr. Cofield argues that WFG's conversion claim is based exclusively on Mr. Cofield's alleged use of WFG's confidential business information. Mot. 14 (citing FAC ¶ 291). WFG responds that the preemption argument is "premature," and WFG's conversion claim is not

preempted because it is based on facts and allegations distinct from any trade secret claim. Opp. 14–15.

Here, WFG's conversion claim is based entirely on its allegations that Defendants "obtained WFGIA's confidential business information" and "unlawfully brought this information to their new competing business." FAC ¶¶ 288–89. In other words, WFG alleges that Defendants "converted" WFG's confidential information. *See id.* Even though WFG "does not plead a trade secret claim or that the confidential information which was converted constitute trade secrets" (Opp. 14), its conversion claim is still based exclusively on the alleged use of this confidential business information. WFG has not plead separate facts that could support a conversion claim apart from the facts alleged regarding the misuse of confidential information. The FAC describes Mr. Cofield's purported misuse of WFG's confidential information to establish the Olsons' competing company, GFI. These are the same facts used to support WFG's claim for conversion of confidential information. Thus, WFG's conversion claim is preempted by CUTSA. *See Avago*, 2017 WL 412524, at *6 ("Courts in this District have concluded … that CUTSA preemption extends to claims based on the misappropriation of confidential and proprietary information, regardless of whether it qualifies as a 'trade secret'"); *see also SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *7 (N.D. Cal. Dec. 11, 2012) (holding that "CUTSA supersedes claims based on the misappropriation of information, regardless of whether such information ultimately satisfies the definition of trade secret").

The Court GRANTS Mr. Cofield's motion to dismiss WFG's conversion claim against him. Although the Court is skeptical WFG can avoid preemption based on the facts currently alleged in the FAC, WFG will be permitted leave to amend to state a claim of conversion.

### E. Civil Conspiracy—Third Cause of Action

Mr. Cofield argues that WFG's civil conspiracy claim fails because the claim is "derivative of its breach of contract claim," and because the FAC fails to identify any specific wrongful tort. Mot. 12–13. Civil conspiracy consists of three elements: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
16

the wrongful conduct." *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935–36 (N.D. Cal. 2015) (citing *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995)).

The FAC alleges that Defendants "conspired to create a competing business to unfairly and unlawfully compete against WFGIA" and "conspired to use WFGIA's confidential information to induce insurance agents to breach their agreements." FAC ¶ 267. WFG argues that the FAC includes plausible allegations regarding the "Anchor Leg" scheme to purportedly recruit away WFG agent married couples to GFI, while one of the spouses remained at WFG (mirroring the overt acts that the Olsons had already begun). Opp. 10–11 (citing FAC).

Mr. Cofield argues that WFG cannot plead a civil conspiracy claim based on a breach of contract. Mot. 12–13 (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 508 (1994) (holding that a contracting party cannot be liable for civil conspiracy to interfere with its own contract)). The allegations relating to the "Anchor Leg" scheme appear related to both WFG's claims for breach of contract and WFG's claims for tortious interference with contract. However, for the reasons stated above, including because the FAC lacks sufficient specificity regarding which contracts were disrupted, WFG has not stated a plausible claim for tortious interference with contract. Thus, those allegations cannot supply the tort required to state a claim for civil conspiracy. WFG also brings claims for fraud and conversion. Because the Court finds that WFG has failed to state a plausible claim for fraud and conversion (*see supra* Parts III(C) and III(D)), WFG's allegations for those claims similarly cannot supply the tort required to state a claim for civil conspiracy.

Accordingly, the Court GRANTS Mr. Cofield's motion to dismiss WFG's civil conspiracy claim against him. WFG will be permitted leave to amend this claim consistent with the Court's Order.

### F. Unfair Competition Law—Seventh Cause of Action

Mr. Cofield argues that WFG's UCL claim fails because "all of [WFG's] other claims fail as a matter of law." Mot. 15. The Court denied Mr. Cofield's Motion as to WFG's breach of contract claim based on breach of the Confidentiality Provision and breach of the Disparagement

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
17

Provision. *See supra*, Parts III(A)(2) and (A)(3). Accordingly, the Court rejects Mr. Cofield's argument that WFG's UCL claim fails on this basis and DENIES Mr. Cofield's motion to dismiss WFG's UCL claim.

### G. Unjust Enrichment—Fifth Cause of Action

Mr. Cofield argues that WFG's unjust enrichment claim fails because (1) unjust enrichment is not a cause of action under California law; (2) the unjust enrichment claim is entirely derivative of its UCL claim; and (3) the unjust enrichment claim is preempted by CUTSA because it is based solely on Defendants' alleged misuse of WFGs confidential information. Mot. 15. The Court finds the first two arguments unpersuasive. *See Katz-Lacabe v. Oracle Am., Inc.*, No. 22-CV-04792-RS, 2023 WL 6466195, at *6 (N.D. Cal. Oct. 3, 2023), *aff'd*, No. 22-CV-04792-RS, 2023 WL 7166815 (N.D. Cal. Oct. 30, 2023) ("Plaintiffs' FAC successfully pleads an unjust enrichment cause of action under California law"); *see also Astiana v. Hain Celestial Group., Inc.*, 783 F.3d 753, 756 (9th Cir. 2015) ("To the extent the district court concluded that the [unjust enrichment] cause of action was nonsensical because it was duplicative of or superfluous to [plaintiff's] other claims, this is not grounds for dismissal").

Regarding Mr. Cofield's argument that the unjust enrichment claim is preempted by CUTSA, WFG responds that the unjust enrichment claim is "wholly distinct" from its claims for conversion and unfair competition law and therefore not preempted. Opp. 16–17. As WFG acknowledges, its unjust enrichment claim is based on allegations that Defendants unjustly enrich themselves "when they use WFGIA's confidential business information to replicate its successful business model and start a new, competing business." Opp. 15 (citing FAC ¶ 279). Thus, WFG's unjust enrichment claim is preempted by CUTSA. *See Memry Corp. v. Kentucky Oil Tech., N.V.*, No. C-04-03843 RMW, 2005 WL 1656877, at *1 (N.D. Cal. July 14, 2005) (concluding unjust enrichment claim preempted by CUTSA "to the extent" the claim is based on allegations that counterdefendant "misused confidential information" because "[a]t bottom, any such claim is for misappropriation of trade secrets, and [counterclaimant] should not be able to avoid the CUTSA's preemptive ambit by dressing ... claims up in different clothing....") (cleaned up).

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
18

United States District Court
Northern District of California

1   Accordingly, as currently plead, WFG's unjust enrichment claim against Mr. Cofield is
2   preempted by CUTSA. Again, although the Court is skeptical WFG can avoid preemption based
3   on the facts currently alleged in the FAC, WFG will be permitted leave to amend to state a claim
4   of unjust enrichment.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Mr. Cofield's motion as follows:

- The Court GRANTS Mr. Cofield's motion to dismiss WFG's breach of contract claim against him arising from breach of the Non-Solicitation Provision without leave to amend.
- The Court DENIES Mr. Cofield's motion to dismiss WFG's breach of contract claim against him arising from breach of the Confidentiality Provision.
- The Court DENIES Mr. Cofield's motion to dismiss WFG's breach of contract claim against him arising from breach of the Nondisparagement Provision.
- The Court GRANTS Mr. Cofield's motion to dismiss WFG's tortious interference with contract claim against him with leave to amend.
- The Court GRANTS Mr. Cofield's motion to dismiss WFG's fraud claim against him with leave to amend.
- The Court GRANTS Mr. Cofield's motion to dismiss WFG's conversion claim against him with leave to amend.
- The Court GRANTS Mr. Cofield's motion to dismiss WFG's civil conspiracy claim against him with leave to amend.
- The Court DENIES Mr. Cofield's motion to dismiss WFG's UCL claim.
- The Court GRANTS Mr. Cofield's motion to dismiss WFG's unjust enrichment claim against him with leave to amend.

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
19

Any amended complaint must be filed within 21 days of this Order.

**IT IS SO ORDERED.**

Dated: November 4, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 24-cv-00477-EJD
ORDER GRANTING IN PART DAJUAN COFIELD'S MOTION TO DISMISS
20