1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SANDRA OLSON, et al.,

Plaintiffs,

v.

WORLD FINANCIAL GROUP
INSURANCE AGENCY, LLC,

Defendant.

Case No.   24-cv-00477-EJD

**ORDER DENYING OLSONS' MOTION
FOR PRELIMINARY INJUNCTIVE
RELIEF**

Pending before the Court are cross-motions for preliminary injunctive relief.  Sandra Olson's and Eric Olson's (collectively, the "Olsons") Mot., ECF No. 107; World Financial Group Insurance Agency, LLC's ("WFG") Mot., ECF No. 123.  The Court took both motions under submission following oral argument on November 21, 2024.  On December 6, 2024, the parties filed a status report updating the Court regarding a potential informal resolution to WFG's motion for preliminary injunctive relief.  ECF No. 173.  During a March 13, 2025 status conference, counsel for WFG suggested the parties would continue discussions to reach an informal resolution.  Based on that representation, the Court's order below addresses only the Olsons' motion for preliminary injunctive relief.

## I.    BACKGROUND

The Court has detailed the background of this consolidated action in several orders.  *See, e.g.*, ECF No. 57.  At a high-level, this case involves the Olsons' departure from their former employer, WFG.  WFG is a multi-level marketing company that employs thousands of agents who sell insurance products.  The Olsons started a new competing company called Global Financial

Case No.: 24-cv-00477-EJD
ORDER DENYING MOT. FOR PRELIM. INJUNCTIVE RELIEF

1    Impact, LLC ("GFI"), that also sells insurance products.  The Olsons and WFG have brought

2    claims against one another arising out of WFG's Agent Agreements and based on circumstances

3    surrounding the Olsons' decision to leave WFG.  GFI and WFG also have pending claims against

4    each other for unfair competition, tortious interference with contract, and similar claims.

5        From the Olsons' perspective, WFG fosters a toxic working environment and uses illegal

6    agreements to threaten workers who seek to leave.  In WFG's view, the Olsons disregarded their

7    contractual obligations and concocted a scheme to steal WFG's confidential information before

8    leaving the company to start GFI.

9        Procedurally, this case is somewhat complicated.  Before the Court consolidated the related

10   cases, WFG filed a motion for a temporary restraining order, which was denied.  *See World Fin.*

11   *Group Ins. Agency v. Eric Olson*, No. 24-cv-00480-EJD (N.D. Cal.), ECF No. 64.  The Court then

12   granted WFG's motion to compel all claims against the Olsons and vice versa to arbitration,

13   except for both parties' claim for injunctive relief—relief that is squarely exempted from the

14   arbitration agreement.  ECF No. 56.[1]

15       Presently before the Court are those requests for preliminary injunctive relief.  For the

16   reasons stated below, the Court DENIES the Olsons' motion.

## II.    LEGAL STANDARD

18       A plaintiff is entitled to a preliminary injunction if they show that (1) they are likely to

19   succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary

20   relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest.

21   *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The Ninth Circuit applies a "sliding

22   scale" approach to the *Winter* standard wherein "the elements of the preliminary injunction test are

23   balanced, so that a stronger showing of one element may offset a weaker showing of another."

24   *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

25

26   _____

27   [1] The Olsons filed a motion to stay WFG's counterclaims against GFI pending arbitration, or in
     the alternative, to compel the claims to arbitration or dismiss them.  *See* ECF No. 190.  That
     motion remains pending.

28   Case No.: 24-cv-00477-EJD
     ORDER DENYING MOT. FOR PRELIM. INJUNCTIVE RELIEF

United States District Court
Northern District of California

United States District Court
Northern District of California

## III.  DISCUSSION

The Olsons seek to enjoin WFG from enforcing certain restrictions in the Agent Agreement because the restrictions violate California Business & Professions Code § 16600.  Mot. 1.  Specifically, the Olsons challenge three provisions in the Agreement: § 2.15 (the "Non-Solicitation Provision"), § 2.16 (the "Confidentiality Provision"), and § 2.17 (the "Non-Disparagement Provision"), which collectively, the Olsons refer to as the "Restrictive Covenant."

The Non-Solicitation Provision states:

> Except as prohibited by law, during the period that Agent is an Agent of WFG and for a period of two (2) years following the termination of this Agreement for any reason, Agent shall not, either individually or in partnership or jointly or in conjunction with any other person or entity, as principal, agent, consultant, contractor, employer, employee or in any other manner, directly or indirectly, solicit, induce or entice away or in any other manner persuade or attempt to persuade any individual who is a current agent of WFG and with whom the Agent had business contact with on behalf of WFG or its affiliated or related entities, to terminate or alter their agent relationship with WFG to join a competing organization.

The Confidentiality Provision states:

> Agent will not use, disseminate or reveal, other than on behalf of WFG as authorized by WFG or the Product Providers, any Confidential Information or Trade Secret of WFG or of the Product Providers, which Agent has or hereafter receives. Agent agrees that immediately upon the termination of this Agreement, Agent will return all documents, files and lists containing any Confidential Information or Trade Secret to WFG and the same shall not be copied or duplicated.

The Non-Disparagement Provision states:

> Agent shall not do anything that will damage the business, good name or reputation of WFG, Affiliated Companies and/or their respective officers, directors, and employees.

In the Court's prior order on the Olsons' motion to dismiss, the Court held that the Non-Solicitation Provision is void under section 16600.  MTD Order 10, Case No. 24-cv-00480, ECF No. 209.  As for the Confidentiality Provision, the Court held that "while broad, [it] is not so broad to be void under section 16600."  *Id.* at 11.  The Court further declined to find the Non-Disparagement Provision void under section 16600.  *Id.* at 14–15.

Despite the above rulings, the Olsons contend the Court should conclude differently as to

the Confidentiality and Non-Disparagement Provisions this time around because discovery

revealed that "WFG wields the three provisions as one." Mot. 9. Further, they argue that, even

evaluated separately, the Confidentiality and Non-Disparagement Provisions are individually void.

*Id.*

### A.    Likelihood of Success on the Merits

Any contract that inhibits a person from "engaging in a lawful profession, trade, or

business or of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600(a); *Edwards v.

Arthur Anderson LLP*, 44 Cal. 4th 937, 946–47 (2008). The Ninth Circuit has construed section

16600 as extending beyond noncompetition agreements to any "restraint of a substantial

character." *Golden v. Cal. Emergency Physicians Med. Grp.*, 896 F.3d 1018, 1021 (9th Cir. 2018)

(citations omitted). A contractual provision "imposes a restraint of a substantial character if it

significantly or materially impedes a person's lawful profession, trade, or business." *Id.* at 1024.

To meet this standard, a provision "need not completely prohibit the business or professional

activity at issue, nor does it need to be sufficient to dissuade a reasonable person from engaging in

that activity." *Id.* (citations omitted). But its restraining effect "must be significant enough that its

enforcement would implicate the policies of open competition and employee mobility that animate

section 16600." *Id.* (citations omitted).

With those considerations in mind, the Court turns to the Olsons' arguments regarding the

Confidentiality and Non-Disparagement Provisions to determine which, if any, would change the

Court's prior rulings as to these provisions.

### 1.    Restrictive Covenant as One Provision

First, the Olsons argue that, in practice, WFG asserts the three provisions in the so-called

Restrictive Covenant as one. In support, they refer to WFG's termination letters, deposition

testimony, and pleadings where WFG explains how the three provisions operate. The Olsons'

proffered examples miss the mark. For example, the Olsons point to WFG's termination letter to

Mr. Olson stating that he built "a competing business . . . in a manner that violates" all three

sections. *See* Mot. 9. But in doing so, the termination letter explains how he independently

United States District Court
Northern District of California

United States District Court
Northern District of California

1  violated each of the provisions in separate paragraphs. *See* ECF No. 107-29. Likewise, the

2  deposition testimony of WFG's Rule 30(b)(6) witness that the three provisions "work together and

3  should be read in conjunction with one another" does not necessarily mean they are used in

4  combination to prevent solicitation of employees. ECF No. 107-5 at 93:5–94:7. Instead, this

5  testimony articulates a basic canon of contract interpretation: that each provision should be read in

6  relation to the others and in the context of the contract as a whole. Accordingly, the above

7  evidence does not persuade the Court that it should reverse its prior finding that the three

8  provisions operate separately.

9                      **2.      Confidentiality Provision**

10       With respect to just the Confidentiality Provision, the Olsons raise two related arguments.

11  *First*, the Olsons claim that the Confidentiality Provision is void because it is broader than

12  necessary to protect WFG's business interests. *Second*, the Olsons argue that the Confidentiality

13  Provision functions as a void noncompete because it prohibits "use" of client and agent names and

14  contact information, thereby preventing the Olsons from soliciting clients and recruiting WFG

15  agents.

16                      **a.      Overbreadth**

17       The Olsons contend that the Confidentiality Provision must be invalidated as overbroad

18  because it creates liability for using public information. Mot. 13. Liability for using public

19  information, the Olsons argue, constitutes a substantial restraint on former agents' ability to solicit

20  agents and otherwise compete with WFG. *Id.* This claim is based on the Confidentiality

21  Provision's use of the defined term Confidential Information. The Agent Agreement defines

22  Confidential Information as:

23       Any and all Personally Identifiable Information or confidential and proprietary
         records, data or information created by or on behalf of, or belonging to, WFG and
24       now or hereafter acquired by, made known or disclosed to the Agent or any
         Assistant which has value to, and is not generally known by, competitors or
25       potential competitors of WFG, and includes but is not limited to hierarchy lists
         and Personally Identifiable Information deemed to be confidential by applicable
26       federal, state, commonwealth and/or local laws and list(s) of WFG agents,
         including their identities and contact information. Confidential information does
27

28  Case No.: 24-cv-00477-EJD
    ORDER DENYING MOT. FOR PRELIM. INJUNCTIVE RELIEF
                                         5

not include information which becomes generally available to the public other than as a result of disclosure by the Agent, any Assistant or any member of WFG's network of contractually affiliated agents.

Agent Agreement § 1.8.

The Court previously declined to find the Confidentiality Provision so broad as to be void because it is separate from the Non-Solicitation Provision, and the Non-Solicitation Provision does not incorporate or rely on an interpretation of the Confidentiality Provision. MTD Order 12. In finding that the Confidentiality Provision differs from confidentiality provisions that have been rendered void in other cases, the Court explained that it is tailored to personally identifiable information "deemed to be confidential by applicable federal, state, commonwealth and/or local laws and list(s) of WFG agents, including their identities and contact information" with an exception for information "which becomes generally available to the public." *Id.* The Court also noted that WFG's claims based on breach of this Confidentiality Provision "turn on the misuse of information," and "do not stand or fall on the non-solicitation provision." *Id.* (quoting *First-Citizens Bank & Tr. Co. v. HSBC Holdings plc*, No. 23-CV-02483-LB, 2024 WL 115933, at *10 (N.D. Cal. Jan. 10, 2024)).

This time, the Olsons point to agent identities and contact information, hierarchy information, compensation information, agent rankings, and identities of top earners as examples of publicly available information that are covered by the Confidentiality Provision. Mot. 13–18. The Olsons' view is that a prohibition on use of such information prevents former agents from competing against WFG. *Id.* at 13. WFG does not necessarily dispute the Olsons' classification of this information as publicly available, but counters that the kinds of information the Olsons cite are not what the Confidentiality Provision protects. Instead, "the specific combination of the uplines and downlines, consisting of thousands of insurance agents (and their relationships to one another), [is what] renders this information protectable." Opp. 19. WFG appears to claim that the scope of the Confidentiality Provision is limited to the hierarchy lists themselves, not the publicly available pieces of information within the hierarchy structure (i.e., individual agents' identities and their contact information). However, this interpretation of the Confidentiality Provision is

United States District Court
Northern District of California

1    difficult to reconcile with evidence submitted by the Olsons demonstrating the opposite, such as

2    the deposition testimony of WFG's 30(b)(6) witness.  *See, e.g.,* ECF No. 107-5 at 17:14–23 ("Q.

3    WFG doesn't consider the names and . . . contact information for customers to be confidential

4    information, right? A. Absolutely not.  That is certainly confidential information.").  The Court is

5    therefore presented with competing and conflicting interpretations of the scope of the

6    Confidentiality Provision.

7            Prior courts have invalidated confidentiality provisions as de facto noncompetes where an

8    overly expansive definition of "confidential information" would effectively prevent former

9    employees from pursuing meaningful employment in their chosen profession.  *See Brown v. TGS*

10    *Mgmt. Co., LLC*, 57 Cal. App. 5th 303, 317 (2020), *as modified on denial of reh'g* (Nov. 12,

11    2020).  But not all broad definitions of "confidential information" are void under section 16600.

12    *See Galderma Lab'ys, L.P. v. Tisckos*, No. 2:21-CV-05522-FLA (SKX), 2024 WL 2208096, at *7

13    (C.D. Cal. Mar. 29, 2024).  *Galderma*, for instance, involved a definition of "confidential

14    information" that included all "confidential and proprietary information of the Company,

15    including . . . vendors and vendor lists; suppliers and supplier lists; customers and potential

16    customers; . . . and other business information disclosed or made available to Employee by the

17    Company," and excluded publicly available information.  *Id.* at *1.  In rejecting the defendant's

18    argument that this definition was overly broad, the court distinguished *Brown* because the

19    definition "would merely prevent [the defendant] from disclosing to his subsequent employer

20    information as defined as Confidential Information, like customer, vendor, and supplier lists."  *Id.*

21    at *7.  Notably, the court so ruled even though the definition was not "narrowly tailored" to the

22    protection of trade secrets.  *Id.*

23            The Confidentiality Provision here—or more specifically, the definition of Confidential

24    Information—may not be so broad as to preclude the ability of former agents to fairly compete

25    with WFG or solicit its agents and customers.  If former agents are free to rely on publicly

26    available information like contact information to solicit agents and customers, as WFG seems to

27    concede, the Confidentiality Provision would be akin to that in *Galderma* and not run afoul of

28    Case No.: 24-cv-00477-EJD
     ORDER DENYING MOT. FOR PRELIM. INJUNCTIVE RELIEF

United States District Court
Northern District of California

section 16600. On the other hand, if WFG does use the Confidentiality Provision to substantially

prevent former agents from contacting and soliciting WFG agents and customers entirely, the

provision would be overbroad. Whether the Confidentiality Provision functions as a noncompete

thus depends on how the provision is interpreted and applied. The Court turns to this issue next.

### b.    Prohibition on "Use" of Confidential Information

The Olsons contend that WFG enforces the Confidentiality Provision's prohibition on

"use" of Confidential Information to prevent former agents from soliciting agents and customers,

so the provision is a void non-compete in disguise. Mot. 10 (citing *Sunbelt Rentals, Inc. v. Victor*,

No. C 13-4240 SBA, 2014 WL 492364, at *8 (N.D. Cal. Feb. 5, 2014)).

In *Sunbelt Rentals*, the court explained that "[c]ovenants not to solicit a former employer's

customers are treated as covenants not to compete, and are invalid under section 16000—except as

necessary to protect trade secrets." *Sunbelt Rentals*, 2014 WL 492364, at *8 (citing *Dowell v.

Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 577 (2009)). The provision at issue in that case

expressly restricted employees' ability to solicit other employees and customers following

termination. *Id.* at *1. Among other terms, the provision stated that the employee shall not

"solicit the provision of products or services, similar to those provided by [Sunbelt] . . . to any

[former customer] who purchased or leased products or services from [Sunbelt] at any time during

the twelve (12) calendar months immediately preceding the termination of this Agreement for any

reason and for or with whom Employee had contact, responsibility, or access to Confidential

Information related to such person or entity." *Id.* at *2. The court concluded that this provision

was unenforceable under section 16600 because it restricted the plaintiff from soliciting

customers. The provision at issue in *Sunbelt Rentals*—like the agreements in *Dowell* and *W. Air

Charter* that the Court previously analyzed, *see* MTD Order 11–12—was bound together with the

confidentiality provisions. In each case, the courts found void non-solicit provisions that also

implicated confidentiality provisions because the two rose and fell together.

In contrast, the Confidentiality Provision at issue here prohibits use of Confidential

Information and is separate from the Non-Solicitation Provision the Court already found to be

Case No.: 24-cv-00477-EJD
ORDER DENYING MOT. FOR PRELIM. INJUNCTIVE RELIEF

1    void.  *See* Agent Agreement §§ 1.8, 2.16; MTD Order 10.  "Use" is not defined, but WFG

2    confirms in its opposition that an agent would breach the Confidentiality Provision if that agent

3    used WFG's Confidential Information "for customer or insurance agent solicitation, or for any

4    other unauthorized, external use."  Opp. 15.  WFG argues this is not inconsistent with the law.  *Id.*

5         The Confidentiality Provision can serve to protect WFG's legitimate confidentiality

6    concerns depending on how it is applied.  As the Court held in ruling on the Olsons' motion to

7    dismiss, WFG plausibly alleged that the location of an agent within a particular hierarchy is

8    confidential.  *See* MTD Order 13.  This is consistent with WFG's position here that the hierarchy

9    lists themselves, including the placement of agents relative to one another and the revenue

10   associated with those placements, are what is subject to the Confidentiality Provision.  Opp. 16,

11   19.  Use or disclosure of that information may give rise to a breach of contract claim.

12        At the same time, the Court recognizes that the Confidentiality Provision can be applied to

13   prevent the Olsons' ability to fairly compete.  A ban on "use" of the contact information of agents

14   and customers, even when such information is publicly available, would stifle their ability to

15   compete.  Indeed, WFG's own corporate representative could not identify a way a former agent

16   could compete with WFG without using the contact information of customers.  *See* ECF No. 107-5

17   at 17:8–18:1.  But as discussed above, there is some confusion regarding whether WFG truly

18   claims that the publicly available identities and contact information of agents and customers are

19   protected Confidential Information.  If use of such information is prohibited by the Confidentiality

20   Provision, this application would be an invalid restraint under section 16600.  *See Brown v. TGS*

21   *Mgmt. Co., LLC*, 57 Cal. App. 5th 303, 317 (2020); *AMN Healthcare, Inc. v. Aya Healthcare*

22   *Servs., Inc.*, 28 Cal. App. 5th 923, 940 (2018) ("[S]ection 16600 precludes an employer from

23   restraining an employee from engaging in his or her 'profession, trade, or business,' even if such

24   an employee uses information that is confidential but not a trade secret.").

25        In light of this tension, the issue is how to now treat the Confidentiality Provision.  Though

26   it previously found the Non-Solicitation Clause invalid, the Court declined to find the entire Agent

27   Agreement void.  *See* MTD Order 10.  The Court will similarly not revise the Confidentiality

1    Provision to render it valid, because "the policy of [Section 16600] would be undermined by doing

2    so." *Kolani v. Gluska*, 64 Cal. App. 4th 402, 407 (1998); *see also Dowell*, 179 Cal. App. 4th at

3    579 ("Any attempt to construe the noncompete and nonsolicitation clauses in such a manner as to

4    make them lawful would not be reforming the contract to correct a mistake of the parties but rather

5    to save a statutorily proscribed and void provision."). As such, the fate of the Confidentiality

6    Provision depends on how it is interpreted and enforced by WFG.

7           The Olsons have demonstrated a fair likelihood of prevailing on their section 16600

8    challenge to the Confidentiality Provision. The lack of clarity and conflicting evidence on the

9    proper scope of the contract term raises serious questions as to its validity. However, the merits of

10   the WFG's claim based on breach of this provision are not fully developed. The Olsons theorize

11   how WFG intends to enforce this provision, but the Court has already concluded that WFG

12   plausibly stated a claim for breach based on WFG's allegations regarding the confidential location

13   of an agent within a particular hierarchy and the Olsons' alleged use of that information. *See*

14   MTD Order 13. Whether WFG can ultimately prevail based on a breach of the Confidentiality

15   Provision depends on how WFG seeks to apply the provision to the Olsons, an issue that will be

16   resolved in arbitration. Accordingly, the Olson's have not made a particularly strong showing of

17   likelihood of success on their challenge to the Confidentiality Provision, but other *Winter* factors

18   may make up for this weakness.

19                          **3.     Non-Disparagement Provision**

20          The Court previously declined to find the Non-Disparagement Provision void. *See* MTD

21   Order 15. Now, the Olsons raise the same arguments but bolstered by testimony from WFG

22   witnesses confirming that the Non-Disparagement Provision "restrains competition." *See* Mot. 21.

23   The cited testimony does not change the Court's prior analysis. The merits of WFG's claim will

24   ultimately be tested in arbitration, but the Olsons have not established they are likely to succeed in

25   establishing that the Non-Disparagement Provision is void under section 16600. The Court thus

26   declines to issue a preliminary injunction based on the non-disparagement provision and proceeds

27   to analyze the remaining *Winter* factors only with respect to the Confidentiality Provision. *See*

28   Case No.: 24-cv-00477-EJD

1    *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal quotation marks and brackets

2    omitted) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of

3    success on the merits, [the Court] need not consider the remaining three Winter elements").

4    **B.    Irreparable Harm**

5    The Olsons argue that absent preliminary relief, WFG's assertion of the Confidentiality

6    Provision will impair their ability to grow GFI as a business and deprives them of business

7    opportunities.  Mot. 22–24.  To be sure, the types of injuries the Olsons raise (i.e., damage to

8    business reputation or goodwill, loss of prospective customers, inability to recruit agents)

9    constitute irreparable harm.  But the Court is not convinced that the Olsons face an imminent

10   threat of such harms here.  Their claim of lost opportunities to recruit new agents, for example, is

11   undercut by their description of GFI as the "Fastest Growing Financial Company on the Globe,"

12   having recruited over 20,000 agents in its first eight months of business.  ECF No. 114-15.

13   Though the Olsons speculate that GFI could have grown even faster without the influence of

14   WFG, they offer no objective evidence in support.  Their reliance on a self-serving declaration by

15   Mr. Olson is likewise unpersuasive.

16   **C.    Balance of Equities**

17   Where a plaintiff has made a weaker showing of likelihood of success on the merits, "a

18   preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's

19   favor, and the other two *Winter* factors are satisfied."  *All. for the Wild Rockies v. Pena*, 865 F.3d

20   1211, 1217 (9th Cir. 2017) (internal citations omitted) (emphasis in original) (citing *Shell*

21   *Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

22   Here, the scales do not tip in the Olson's favor much, let alone sharply.  The harm of

23   allowing WFG to enforce its Confidentiality Provision to prevent solicitation of WFG agents and

24   customers, while significant, is not substantially greater than the harm of potentially allowing the

25   Olsons to use WFG's confidential information with no recourse.  Also, as noted above, the Olsons

26   have not proffered sufficient evidence to show that they are currently or will likely suffer

27   irreparable harm.  Thus, the Olsons have not met the heightened burden of showing that the

28   Case No.: 24-cv-00477-EJD
     ORDER DENYING MOT. FOR PRELIM. INJUNCTIVE RELIEF
     11

United States District Court
Northern District of California

balance of equities tips sharply in their favor.

**D.    Public Interest**

Lastly, the Olsons cite California's strong public policy underlying section 16600 as proof that a preliminary injunction would serve the public interest.  However, given the uncertainty regarding whether the Confidentiality Provision in fact violates section 16600 or serves to lawfully protect WFG's confidential information, this *Winter* factor does not weigh in favor of injunctive relief.

**IV.    CONCLUSION**

For the foregoing reasons, the Olsons' motion for preliminary injunctive relief is DENIED. The parties are ordered to submit a status report by April 18, 2025 with an update on WFG's request for injunctive relief.

**IT IS SO ORDERED.**

Dated:  April 14, 2025

_____
EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California