UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SANDRA OLSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WORLD FINANCIAL GROUP INSURANCE AGENCY, LLC, <br><br> Defendant. | Case No.  5:24-cv-00477-EJD <br><br> **ORDER GRANTING MOTION TO COMPEL TO ARBITRATION** <br><br> Re: ECF No. 190 |

Pending before the Court is Plaintiff Global Financial Impact, LLC's ("GFI") motion to stay this action under the Federal Arbitration Act (FAA), compel Defendant World Financial Group Insurance Agency, LLC's ("WFG") amended counterclaims to arbitration, or dismiss WFG's counterclaims altogether. Mot., ECF No. 190.[1] The motion has been fully briefed. Opp., ECF No. 197; Reply, ECF No. 202.[2] The Court also heard oral argument from the parties on March 13, 2025. ECF No. 218. After careful consideration of the parties' papers and argument, the Court finds that the arbitrability of WFG's counterclaims is dispositive of GFI's motion and that the Court need not reach the question of whether to stay this action and/or dismiss WFG's counterclaims. For the reasons discussed below, the Court **GRANTS** GFI's motion to compel WFG's counterclaims to arbitration.

---

[1] Record citations refer to the above-captioned action unless otherwise noted.
[2] Pincites to the parties briefing will hereinafter refer to the ECF-stamped pagination on the unredacted versions of the parties' briefs that have been filed under seal. Mot., ECF No. 191-3; Opp., ECF No. 198-2; Reply, ECF No. 203-3.

Case No.: 5:24-cv-00477-EJD
ORDER COMPELLING ARBITRATION

## I. BACKGROUND

### A. Factual Background

The Court has described the factual background of this case in prior orders (*see, e.g.*, ECF No. 57) but finds it appropriate to briefly touch upon some points relevant to the analysis of the instant motion. This case involves Eric and Sandra Olson's (the "Olsons") departure from their former employer, WFG, and creation of their new competing company, GFI. WFG requires its agents to sign an agreement (the "Agent Agreement") that contains provisions that the Olsons contend are unlawfully restrictive (the so-called "Restrictive Covenants"). In addition to the Agent Agreement, WFG required the Olsons—and presumably all WFG agents—to sign agreements to arbitrate claims between them. *See* Arbitration Agreement, ECF No. 192-5. Specifically, agents agreed "to use binding arbitration as the means to resolve all disputes that may arise out of or relate to [their] relationship with WFG." *Id.* at 1.

### B. Procedural Background

This case began on January 25, 2024, when WFG filed a complaint against the Olsons in Santa Clara County Superior Court. Mrs. Olson and GFI filed suit against WFG in this Court the same day (*Sandra Olson, et al., v. World Fin. Grp. Ins. Agency, LLC*, Case No. 5:24-cv-00477 (N.D. Cal.)). The following day, Mr. Olson filed another lawsuit against WFG (*Eric Olson v. World Fin. Grp. Ins. Agency, LLC, et al.*, Case No. 5:24-cv-00481 (N.D. Cal.)) and removed WFG's complaint to this Court (*World Fin. Grp. Ins. Agency, LLC v. Olson, et al.*, Case No. 5:24-cv-00480 (N.D. Cal), ECF No. 1). The Court later consolidated the three cases and designated the above-captioned action as the lead case. ECF No. 58. As all of this was happening, WFG filed another complaint against GFI in the U.S. District Court for the District of Wyoming. *World Fin. Grp. Ins. Agency, LLC v. Global Fin. Impact, LLC*, Case No. 1:24-cv-00019 (D. Wyo.). WFG later dismissed those claims voluntarily.

On July 19, 2024, the Court granted WFG's motion to compel the claims between it and the Olsons to arbitration, except for both parties' claims for injunctive relief—relief squarely exempted from their Arbitration Agreement. Case No. 24-cv-00481, ECF No. 67; Case No. 24-

Case No.: 5:24-cv-00477-EJD
ORDER COMPELLING ARBITRATION
2

cv-00477, ECF No. 56. The claims GFI brought against WFG in its third amended complaint were also not compelled to arbitration at that time, because GFI was not a party to any arbitration agreement with WFG. *See* Third Am. Compl., ECF No. 179. On December 19, 2024, the Olsons served WFG with an arbitration demand asserting breach of the Agent Agreement, violation of Cal. Bus. & Prof. Code § 16600, unfair competition, tortious interference, conversion, and other claims. ECF No. 191-4. WFG then served its own arbitration demand asserting claims for breach of the Agent Agreement, breach of the implied covenant of good faith and fair dealing, and tortious interference with contract. ECF No. 198-4.

WFG filed counterclaims against GFI on January 17, 2025 (ECF No. 182), and a notice of errata revising those counterclaims a few weeks later (ECF No. 189). On February 7, 2025, the day after WFG filed its notice of errata, GFI filed the instant motion. WFG filed amended counterclaims against GFI two weeks later. First Am. Countercls. ("FACC"), ECF No. 195.

## II.   LEGAL STANDARD

The FAA governs the enforceability of contractual arbitration agreements, like the one here. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (citing 9 U.S.C. § 1 *et seq.*). The FAA reflects both a "liberal federal policy favoring arbitration," and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Pursuant to the latter principle, the contractual right to compel arbitration generally "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Kramer*, 705 F.3d at 1126 (citation omitted). Likewise, "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (citation omitted).

There is an exception, however. Under the doctrine of equitable estoppel, "a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer*, 705 F.3d at 1128 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). California law—which neither party

Case No.: 5:24-cv-00477-EJD
ORDER COMPELLING ARBITRATION
3

disputes applies to this action—permits a nonsignatory to enforce an arbitration clause in two circumstances:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."

*Id.* at 1128–29 (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 221 (2009)).  This rule is grounded in fairness and prevents signatories from seeking to hold nonsignatories liable pursuant to a contract while avoiding an arbitration provision in the same agreement.  *Pac. Fertility Cases*, 85 Cal. App. 5th 887, 893 (2022) (citation omitted).

### III. DISCUSSION

GFI contends that the first prong of the *Goldman* test applies to WFG's counterclaims. That is, GFI, a nonsignatory to the Agent Agreement and Arbitration Agreement, argues that it may nonetheless invoke the latter because (1) WFG must rely on the terms of the Agent Agreement to assert its counterclaims, and (2) the counterclaims are founded in and intertwined with the obligations imposed by the Agent Agreement.  Mot. at 20–23.  The Court analyzes whether WFG is equitably estopped from avoiding arbitration under this framework but begins by addressing a threshold procedural issue concerning WFG's counterclaims.

#### A. Amendment of Counterclaims

In its motion, GFI characterizes WFG's counterclaims against GFI (ECF No. 182) as the "Fourth Amended Counterclaims," or "4ACC."  *See* Mot. at 12.  GFI argues that WFG filed this amendment without leave of the Court or GFI as required by the Federal Rules.  WFG denies that its counterclaims are an amendment to any pre-existing claims in this action and contends that it was not required to seek leave because its counterclaims are permissive rather than compulsory. Opp. at 10–13.

Subject to few exceptions, a party must state as a compulsory counterclaim any claim that it has against the opposing party that arises out of the same transaction or occurrence and does not

Case No.: 5:24-cv-00477-EJD
ORDER COMPELLING ARBITRATION
4

require adding another party over whom the Court does not have jurisdiction. Fed. R. Civ. P. 13(a). Compulsory counterclaims are forfeited if not raised in an answer. All other counterclaims are permissive and may be filed later. Fed. R. Civ. P. 13(b). Once the period to amend as a matter of course has passed, a party may amend its pleading only with the opposing party's written consent or leave of court. Fed. R. Civ. P. 15(a)(2).

GFI does not dispute WFG's assertion that WFG's counterclaims are permissive. *See* Reply. Instead, it argues that WFG's claims against the Olsons constitute earlier-filed counterclaims against GFI. Mot. at 16 (citing Case No. 5:24-cv-00480, ECF Nos. 1, 72). But GFI provides no authority to support that reasoning. WFG's counterclaims are different from claims it has previously asserted and are directed against GFI as opposed to the Olsons, so the counterclaims do not appear to be an improper attempt to amend any of WFG's existing claims. The Court will therefore not construe WFG's initial filing of counterclaims (ECF No. 182) as an amendment. Nor does the Court construe WFG's notice of errata (ECF No. 189) as an amendment subject to Rule 15's requirements. By that logic, Mr. Olson's own notice of errata for his first amended complaint against WFG would have been an improper second amendment to the complaint. *See* Case No. 5:24-cv-00481, ECF No. 27. And even if WFG's errata were considered an amendment, it was timely filed within the deadline to amend as a matter of course. *See* Fed. R. Civ. P. 15(a)(1).

On February 20, 2025, during the pendency of the instant motion seeking to dismiss WFG's initial counterclaims, WFG filed its "First Amended Counterclaims." FACC, ECF No. 195. GFI responded with a notice explaining that, because WFG filed this amendment without leave of court and while the instant motion to dismiss was still pending, the Court should not consider the FACC. ECF No. 207. GFI's objection concerning WFG's filing the FACC without leave is not well taken for reasons explained above, but the fact that the FACC was filed before the Court ruled on the instant motion does present a complication. However, the changes in the FACC do not alter the result of the analysis below, so the Court will treat the FACC as the operative pleading for purposes of this Order.

Case No.: 5:24-cv-00477-EJD
ORDER COMPELLING ARBITRATION
5

**B.     Equitable Estoppel**

GFI contends that equitable estoppel applies to WFG's counterclaims because they rely on the Olsons' relationship with WFG—*i.e.*, the Agent Agreement at the heart of the arbitration between WFG and the Olsons—and on Agent Agreements WFG entered into with other ex-agents that have since left to join GFI. The FACC asserts seven causes of action: tortious interference with contract, trade libel, libel per se, fraud, unjust enrichment, civil conspiracy, and unfair competition in violation of Cal. Bus. & Prof. Code § 17200 *et seq.* FACC ¶¶ 258–318. According to GFI, each of these causes of action depends on terms of the Agent Agreement to state a claim, so WFG may not avoid the Arbitration Agreement that forms part of the same agreement.[3]

On the face of the FACC, that appears to be true. The FACC is replete with references to the Agent Agreement and agents' breaches of that contract. *See, e.g.*, *id.* ¶¶ 3 ("GFI convinced numerous WFGIA independent contractor agents to breach their Agreements with WFGIA by diverting independent contractor agents, new recruits, and commission streams away from WFGIA and to GFI . . . ."), 7 ("GFI's entire growth model was based on unfair competition and violations of dozens, if not hundreds, of WFGIA Agreements . . . ."), 34 (listing the non-solicitation, confidentiality, and non-disparagement provisions of the Agent Agreement that collectively form the Restrictive Covenants). The FACC's causes of action center around an alleged scheme in which the Olsons solicited WFG agents, took or induced others to take WFG's confidential information, and used such confidential information to compete with WFG through GFI, all violations of the Agent Agreement. *See id.* ¶¶ 135–49 (alleging that WFG agents "were still under contract with WFGIA . . . when they participated in [soliciting WFG's agents to join GFI] in violation of their Agreements with WFGIA"), 162–75 (alleging that "GFI has utilized its

---

[3] WFG claims that, because the Arbitration Agreement is a separate document from the Agent Agreement, GFI's equitable estoppel argument fails. Opp. at 22 n.4. Not so. WFG requires its agents to sign the Agent Agreement with the Arbitration Agreement in one integrated packet of documents. *See* ECF No. 26-4. As such, they are part of a unified transaction, and the Court will treat them as a single contract. *See* Cal. Civ. Code § 1642 ("Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."); *see also Patterson-Ballagh Corp. v. Byron Jackson Co.*, 145 F.2d 786, 788 (9th Cir. 1944).

Case No.:   5:24-cv-00477-EJD
ORDER COMPELLING ARBITRATION

6

Anchor Leg Strategy to instruct double agents to access WFGIA's protected networks and provide WFGIA's confidential information to GFI" despite the fact that the Agent Agreement requires agents to "keep WFGIA confidential information confidential"), 176–86 (alleging that "WFGIA's confidential information has permitted GFI to replicate WFGIA's business, financial, and compensation models . . . [and] induce [agents] to violate their contract").

WFG does not dispute that the FACC references the Agent Agreement but argues that the viability of its claims does not necessarily rely on any provision in the contract. Opp. at 23–25. Indeed, for GFI's reliance argument to succeed, "[WFG's] claims themselves must intimately rely on the existence of the [Agent] Agreements, not merely reference them." *Kramer*, 705 F.3d at 1132. Here, it is not clear that WFG's causes of action are dependent on the Agent Agreements. For example, although WFG refers to breaches of the Agent Agreement in stating its unfair competition claim, the claim could stand without those references. WFG alleges that other GFI conduct, including "divert[ing] WFGIA customers," and "tak[ing] WFGIA's confidential information [in violation of the Comprehensive Computer Data Access and Fraud Act]" also constitute unfair business practices. FACC ¶¶ 312–13. As another example, WFG's trade libel and libel per se do not even reference the Agent Agreement at all, instead alleging that GFI made false and disparaging statements independent of the contracts. *Id.* ¶¶ 272–83.

However, WFG cannot so easily plead around equitable estoppel. "In matters of equity, such as the application of equitable estoppel, it is the substance of the plaintiff's claim that counts, not the form of its pleading." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 875 (9th Cir. 2021). WFG's claims are inherently rooted in the contractual relationships it had with the Olsons and ex-agents that left to join GFI. That much is clear from the FACC's introduction. WFG summarizes its counterclaims as "GFI convinced numerous WFGIA independent contractor agents to breach their Agreements with WFGIA" (FACC ¶ 3), and "GFI's entire growth model was based on unfair competition and violations of dozens, if not hundreds, of WFGIA Agreements" (*id.* ¶ 7). These alleged breaches of Agent Agreements and the resulting damages WFG incurred form the basis of WFG's counterclaims, even if the FACC does not explicitly say so.

Case No.: 5:24-cv-00477-EJD
ORDER COMPELLING ARBITRATION
7

Take, for example, WFG's claim for unjust enrichment. WFG alleges, among other things, that "GFI . . . did not compensate or provide any consideration to WFGIA in exchange for . . . unlawful solicitation of WFGIA independent contractor agents through its theft of WFGIA's confidential information and disparagement campaign." *Id.* ¶ 301. WFG does not refer to the Agent Agreement to state a claim for unjust enrichment. But in doing so, it cannot avoid evoking the non-solicitation, confidentiality, and non-disparagement provisions of the Agent Agreement, the legality of which is a core issue in the arbitration between WFG and the Olsons. *See* ECF Nos. 191-4, 198-4. In fact, the FACC does not explain how solicitation of WFG's agents could be "unlawful" or how WFG's confidential information is entitled to protection without the effect of the Restrictive Covenants in the Agent Agreement. Thus, even if WFG's counterclaims do not expressly rely on the Agent Agreement, they are at least "intimately founded in and intertwined with" it. *See Kramer*, 705 F.3d at 1128 (equitable estoppel applies "when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory *or* the claims are 'intimately founded in and intertwined with' the underlying contract" (emphasis added)).

*Waymo LLC v. Uber Techs., Inc.*, which WFG cites in opposition, is inapposite. 252 F. Supp. 3d 934 (N.D. Cal. 2017). In *Waymo*, the court declined to apply equitable estoppel because the relevant claims neither relied upon nor were intimately founded in or intertwined with the underlying contract. *See id.* at 937. But that decision was based on the fact that Waymo "expressly forswore reliance on [the agreements] to prove up its claims." *Id.* at 938. Not so here. WFG's counterclaims do not invoke provisions of the Agent Agreement to state a claim, but they are inextricably tied with the Agent Agreement and the obligations it imposes on its signatories. It would be difficult to disentangle WFG's counterclaims from issues that are already properly in arbitration, including whether provisions of the Agent Agreement are void and whether the Olsons (and other agents) breached that agreement. As such, WFG is equitably estopped from preventing its counterclaims against GFI from being arbitrated.

Case No.: 5:24-cv-00477-EJD
ORDER COMPELLING ARBITRATION
8

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** GFI's motion to compel WFG's counterclaims to arbitration.

**IT IS SO ORDERED.**

Dated: September 9, 2025

EDWARD J. DAVILA
United States District Judge

Case No.: 5:24-cv-00477-EJD
ORDER COMPELLING ARBITRATION

9