United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SANDRA OLSON, et al.,<br>Plaintiffs,<br>v.<br>WORLD FINANCIAL GROUP INSURANCE AGENCY, LLC,<br>Defendant. | Case No. 5:24-cv-00477-EJD<br>**ORDER GRANTING IN PART, DENYING IN PART MOTION FOR SANCTIONS, GRANTING MOTION FOR VOLUNTARY DISMISSAL**<br>Re: ECF Nos. 300, 278 |

Before the Court are Defendant's World Financial Group Insurance Agency's ("WFG" or "Defendant") Motion for Sanctions against Plaintiff Global Financial Impact, LLC ("GFI" or "Plaintiff") and its counsel, BraunHagey Borden ("BHB") pursuant to 28 U.S.C. § 1927, Civil Local Rule 7-8, and the Court's inherent authority to impose sanctions, and Plaintiff's Motion for Voluntary Dismissal of its non-arbitrable claims against WFG. ECF Nos. 300, 278. The Court has considered the parties' papers and heard their oral arguments. For the reasons discussed below, the Court **GRANTS** in part and **DENIES** in part WFG's Motion for Sanctions. The Court also **GRANTS** GFI's Motion for Voluntary Dismissal with conditions.

## I. BACKGROUND

The Court has described the factual background of this case in prior orders but finds it appropriate to briefly touch upon some points relevant to the analysis of the instant motion. This case involves two companies that sell insurances products: GFI and WFG. It also involves Eric and Sandra Olson (the "Olsons"). The Olsons were previously employed by WFG but left to

create a new competing company, GFI. GFI and WFG subsequently brought claims against one another arising out of the circumstances surrounding the Olsons' departure. *See* No. 5:24-cv-480-EJD; No. 5:24-cv-481-EJD.

This Court has dismissed GFI's claims against WFG on two previous occasions, finding that GFI had not alleged sufficient facts to state a claim. *See* ECF Nos. 57, 141. In its first Order granting WFG's motion to dismiss, this Court was not persuaded that GFI could establish an existing economic relationship between GFI and a third party as was necessary to establish a claim for interference with prospective economic advantage. *See* MTD Order re: FAC 6–7, ECF No. 57. In its Second Amended Complaint ("SAC"), GFI dropped its tortious interference with prospective economic advantage claim in favor of a tortious interference with contract claim, but the Court found that the claim failed because GFI had not alleged any independently wrongful act. MTD Order re: SAC 8–9, ECF No. 141. The Court also granted WFG's motion to dismiss GFI's Unfair Competition Law ("UCL") claim under the "unlawful" and "unfair" prongs of the UCL. *Id.* at 7. The Court granted leave to amend noting that "GFI [had] not had an opportunity to amend its tortious interference [with contract] claim." *Id.* at 9. GFI filed its Third Amended Complaint ("TAC") on December 19, 2024, again raising UCL and tortious interference with contract claims against WFG. TAC, ECF No. 179. More than a year later, on December 23, 2025, GFI moved to voluntarily dismiss all of its non-arbitrable claims with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2), at least in part because "the interference [with GFI's relationships with its insurance providers] appears to have ceased." Mot. for Vol. Dismissal, ECF No. 278. On January 26, 2026, WFG filed the instant motion seeking sanctions pursuant to 28 U.S.C. § 1927 and under the Court's inherent authority. Mot. for Sanctions ("Mot."), ECF No. 312.

## II. MOTION FOR SANCTIONS

### A. Legal Standards

"Three primary sources of authority enable courts to sanction parties or their lawyers for

United States District Court
Northern District of California

improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). WFG argues GFI and BHB are liable for attorneys' fees under the latter two bases. The Court addresses each in turn.

**B. Sanctions Pursuant to Court's Inherent Authority**

Courts' inherent powers are "those which 'are necessary to the exercise of all others.'" *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980) (quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812)). "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Id.* The Ninth Circuit has commented that while "it is preferable that courts use—and first consider—the range of federal rules and statutes dealing with misconduct and abuse of the judicial system, 'courts may rely upon their inherent powers to sanction bad-faith conduct even where such statutes and rules are in place.'" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) (quoting *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136–37 (9th Cir. 2001))

When acting under its inherent authority, a district court must find either a willful violation of a court order or bad faith before imposing sanctions. *Id.* at 1090. "[B]ad faith, including conduct done vexatiously, wantonly, or for oppressive reasons, requires proof of bad intent or improper purpose." *Id.* Bad faith "may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Raydiant Oximetry, Inc. v. ALC Med. Holdings LLC*, 808 F. Supp. 3d 987, 1003 (N.D. Cal. 2025) (citing *Roadway Exp., Inc.*, 447 U.S. at 766). A specific finding of bad faith must precede any sanction under the court's inherent powers. *Fink*, 239 F.3d at 992.

"An attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power." *Id.* at 994;

*see also Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) ("a finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent'" (quoting *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (1996))). The Ninth Circuit has confirmed that "the finding of no reasonable inquiry [into the Complaint's allegation] is tantamount to a finding of frivolousness." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). To determine whether counsel conducted a reasonable inquiry into its pleadings, courts consider: (1) "the knowledge that reasonably could have been acquired at the time the pleading was filed"; (2) "the type of claim and the difficulty of acquiring sufficient information"; (3) "which party has access to the relevant facts"; and (4) "the significance of the claim in the pleading as a whole." *Banks v. Whambo! Enters. LLC*, 2023 WL 4032965, at *4 (S.D. Cal. June 14, 2023) (citing *Townsend*, 929 F.2d at 1364 (9th Cir. 1990) (en banc). "The reasonable inquiry test is meant to assist courts in discovering whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005).

WFG argues that the Court should hold GFI and BHB jointly and severally liable for attorneys' fees that WFG has incurred as a result of their bad faith. In particular, WFG asserts that GFI and BHB acted in bad faith by knowingly or recklessly asserting and maintaining "frivolous" claims against WFG for more than a year and a half and abusing the judicial process by using the "frivolous" claims to manipulate the proceedings and harass WFG. Mot. 21. According to WFG, GFI and BHB did not conduct a reasonable inquiry into GFI's tortious interference with contract and UCL claims and that bad faith can be inferred from circumstantial evidence. *Id.* at 22–23; Mot. for Sanctions Hr'g Tr. ("Hr'g Tr.") 20–22, ECF No. 370. GFI counters that its claims are meritorious and points to WFG personnel's circulation and discussion of a confidential letter sent by National Life Group ("NLG"), an insurance provider, to GFI that placed GFI on probation. Opp'n 10, ECF No. 337; *see e.g.*, Opp'n Ex. 4 (showing Daniel Charlier (Senior Executive Vice

Chairman, WFG) exchanging messages with Darren Perez (the Olsons' former personal assistant) regarding April 19, 2024, letter from NLG to Sandra Olson placing GFI personnel on a 90-day probationary period); Opp'n Ex. 16 (text message from WFG President Todd Buchanan to Daniel Charlier noting that NLG suspended GFI and another provider was cancelling its agreement with GFI). GFI contends that this discussion evidences WFG's receipt and use of confidential information regarding GFI's provider relationships to interfere with the same relationships. Opp'n 9.

**1. Tortious Interference with Contract Claim**

The Court first considers WFG's argument that GFI's tortious interference with contract claim was frivolous because it was unsupported by a reasonable inquiry. According to WFG, a reasonable inquiry would have revealed that of the eight insurance providers whose contacts GFI alleged WFG tortiously interfered with, four of the contracts did not exist, three were terminated for reasons wholly unrelated to WFG, and one was uninterrupted. Mot. 1–2. More specifically, GFI amended the TAC to allege that WFG interfered with five additional insurance providers, when GFI did not even have contracts with four of these newly added providers. Mot. 5; Hr'g Tr. 6:14–7:6. Further, based on third-party discovery that WFG sought, the three providers originally named in GFI's SAC, NLG, F&G, and Athene, ceased operations with GFI because of GFI's *own* conduct—completely independent of any influence by WFG. *See e.g.*, Hynes Decl. ISO Mot., Ex. 6 (April 5, 2024, email from GFI Chief Operating Officer to NLG leadership requesting a "second chance" and suggesting that a previous executive meeting did not "really show the culture of [GFI] and how much" GFI and NLG are aligned); Hynes Decl. ISO Mot., Ex. 11 (February 19, 2024, email warning NLG that a director from WFG who left to join GFI used a "bait & switch" tactic during a call and that downline GFI agents were using the same tactic). And finally, the eighth provider, Symetra, newly added in the TAC, had only a very small, uninterrupted relationship with GFI. Mot. 6; Hr'g Tr. 7:23–8:5; *see also* Hynes Decl. ISO Mot., Ex. 16 (December 1, 2024, letter from Symetra to GFI by amending the Sales Agreement between the

parties).

In response, GFI argues that its tortious interference with contract claim was meritorious because "substantial evidence show[ed]" that WFG interfered with GFI's provider relationships. Opp'n 9. GFI claims that it had good faith bases to include the amended allegations, even if they turned out to be based on incorrect facts, because Defendant had interfered with three other providers, NLG, F&G, and Athene, and the providers listed in the challenged paragraph of the TAC were "inexplicably not doing business with GFI." *Id.* at 15–16. Because WFG alleges that the original three providers listed in the SAC terminated contracts with GFI for reasons unrelated to WFG, whereas for the newly added providers, contends that there were either no contracts or was no disruption, the Court addresses the two provider groups separately.

**a. NLG, F&G, and Athene**

Turning first to the providers named in the SAC, GFI argues that the reasons provided for NLG, F&G, and Athene's termination of GFI were "a pretext for anticompetitive" conduct. *Id.* at 15; *see also id.* ("Of the communications with individuals from GFI, none indicates that the provider's decision to terminate was not based on tortious interference"). Indeed, the letters, and even internal communications, discussing GFI's suspensions or terminations used fairly boilerplate language: NLG noted that it was not terminating any contracts "for cause," ECF No. 369-10, F&G terminated GFI "for Error," ECF No. 369-3, or for "marketing decision," ECF No. 369-4, and Athene suspended GFI without a clearly communicated reason, *see* ECF 369-15.

Although WFG argues that before both the SAC and TAC were filed, GFI was informed that these three providers terminated their relationships with GFI because of GFI's recruiting and business practices, the Court is not wholly persuaded that the claim as to these three providers was frivolous.[1] Third party productions from NLG, F&G, and Athene, reflecting their internal

---

[1] The Court notes that the Parties engaged in considerable briefing and argument regarding GFI's allegations that Mr. Charlier, acting as an agent for WFG, relied upon Mr. Perez to access confidential information from Mr. Olson's email account. *See* Opp'n § I.C.1. The Court finds that the allegations relating to the distribution and alleged use of this information relate only to providers with whom GFI had contracts with (*e.g.*, NLG). Accordingly, because the Court has

discussions, provide the strongest support for WFG's contention that these providers terminated GFI for reasons unrelated to WFG. These were not documents that GFI had seen at the time that it filed its TAC, such that GFI could not have been said to "know" this information when it filed the TAC. *See Banks*, 2023 WL 4032965, at *4. Further, GFI's suggestion that "a party is unlikely to freely volunteer its role in interfering in a contract, and evidence of the interference is unlikely to be available to the victim of the interference" is well-taken. Opp'n 15 (citing *Sunbeam Corp. v. Payless Drug Stores*, 113 F. Supp. 31, 37 (N.D. Cal. 1953)). And when combined with courts' findings that a decision to pursue claims despite letters from opposing counsel challenging the merits of the same claims is insufficient to demonstrate that counsel knowingly or recklessly pursued the claims, the Court is not inclined to find that as to these three providers, GFI's claims were frivolous. *See, e.g.*, *Amin v. Subway Restaurants, Inc.*, No. 21-cv-00498-JST, 2023 WL 5021783, at *5 (N.D. Cal. Aug. 4, 2023); *see cf. Stiglich v. Contra Costa Cnty. Bd. of Sup'rs*, 106 F.3d 409 (9th Cir. 1997) (noting that Rule 11 sanctions are appropriate if the allegations and other factual contentions *entirely lack* evidentiary support). The Court is also cautious to resist "the understandable temptation to engage in *post hoc* reasoning," especially whereas here, there appears to be a factual question as to the real reason for these providers' contractual terminations. *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 421–22 (1978).

For the above reasons, the Court **DENIES** WFG's Motion as to the tortious interference with contract claim to the extent it was premised on contracts with NLG, F&G, and Athene.

**b. Nationwide, Pacific Life, Transamerica, Allianz, Symetra**

Although there may be some basis in fact for GFI's claims that WFG interfered with its contracts with NLG, F&G, and Athene, the same cannot be said for the five other providers that GFI added to the TAC. GFI does not contest that it did not have contracts with Nationwide,

---

concluded that sanctions are not warranted as to claims premised on those contracts, further discussion about these communications is unnecessary.

Pacific Life, Transamerica, or Allianz. Nor does it contest that it had only a small *uninterrupted* relationship with Symetra that could not form the basis of a tortious interference with contract claim. Mot. 14; *see also* Hr'g Tr. 9:23–10:3. Rather, GFI acknowledges that the paragraph added to the TAC stating that, "GFI also entered into provider agreements with Nationwide, Pacific Life, Transamerica, Allianz and Symetra," should have said that "GFI had an economic *expectation* in doing business with these providers rather than a contract." Opp'n 15 (emphasis added). GFI argues that despite this "factual error," the trajectory of the case was virtually unaltered, because GFI still had to prove an independently wrongful act under either cause of action, thus Defendants' litigation costs were unaffected. *See id.* at 15; Hr'g Tr. 41:15–24.

The Court concludes that GFI and BHB did not conduct a reasonable inquiry into the pleadings surrounding the tortious interference with contract claim as to these five providers and that the claim was frivolous. *See Townsend*, 929 F.2d at 1364. First, GFI and BHB had "unfettered access to GFI's contracts with insurance providers," such that at the time of filing GFI either knew, or could have easily learned, that it did not have contracts with four of these providers, and that its relationship with Symetra was unaffected. Reply 3; Mot. 14–15. By the time that the TAC was filed, "BHB and GFI . . . had the benefit of significant discovery." Mot. 17. The Court also finds that the information about GFI's contractual relationships with these providers was "fundamental to its tortious interference claim." Mot. 15. The existence of a contract between a plaintiff and a third party is an essential factual element of a claim for intentional interference with contract, making this the type of claim for which plaintiff should necessarily verify that contracts exist. Jud. Council of Cal. Civ. Jury Instr. (2026), No. 2201; *see also* Reply 2.

Under somewhat similar circumstances, courts in this district have looked to counsel's inquiry into facts supporting the essential elements of a claim when determining whether a filing is frivolous. For example, in *Great Dynasty Int'l Fin. Holdings Ltd. v. Haiting Li*, No. C-13-1734 EMC, 2014 WL 3381416 (N.D. Cal. July 10, 2014), the court considered a motion for sanctions

where the plaintiff alleged securities fraud causes of action. The court found that plaintiff's counsel recklessly and frivolously asserted federal securities law claims because the alleged misrepresentation that purportedly caused plaintiffs' damages occurred *after* plaintiffs acquired their stock. *Id.* at *8. To state a claim under the securities laws at issue, the plaintiff had to allege both a transaction and loss causation, which is to say that the plaintiff had to allege that the misrepresentation preceded the stock acquisition, and the plaintiff suffered a loss as a result of her reliance on the misrepresentation. *Id.* at *7. The court imposed sanctions and found that "Counsel had all necessary facts in their possession of which to evaluate whether the claims could be asserted," and that even though plaintiff could not demonstrate a causal connection between the misrepresentation and the acquisition, counsel asserted the claims. *Id.* at *8. The court continued, "[s]uch conduct by Counsel was at the very least reckless and frivolous, because the claims had no basis in fact and Counsel failed to make a reasonable and competent inquiry into the law." *Id.* Here, to bring a claim for tortious interference with contract, GFI had to—and did—allege that GFI entered into contracts with Nationwide, Pacific Life, Transamerica, and Allianz. *See* TAC ¶ 68. GFI also alleged that these providers, including Symetra "have abruptly cancelled their contracts with GFI without case." *Id.* ¶ 70. As in *Great Dynasty*, GFI and BHB presumably had within their possession information about with whom GFI had insurance provider contracts. Yet even though these facts would have demonstrated either the complete absence of contracts or, in Symetra's case, that the contract was not cancelled or interfered with, GFI and BHB asserted the claim.

GFI and BHB's attempt to minimize the addition of these providers—characterizing it as "a factual error,"—is unavailing. GFI and BHB do not dispute that GFI did not have contracts with Nationwide, Pacific Life, Transamerica, and Allianz, or otherwise argue that they could not verify this fact, but rather that "Defendant's argument is based on a single paragraph in the complaint." Opp'n 15. Further seeking to minimize WFG's concerns, GFI suggests that it did not use these additional named insurance providers to prolong the litigation because GFI and BHB

stated on record that they would drop the allegations concerning these five providers to avoid discovery costs. *Id.* But GFI made this statement on December 18, 2025, slightly more than a year after it filed its TAC. Hr'g Tr. Dec. 18, 2025, 9:16–25. And, contrary to Plaintiffs' assertion that such a "factual error" does not render the claim frivolous because it does not "erase[] the factual underpinning from some essential element" of the pleading, this "error" does just that. Opp'n 16. After all, the existence of a contract is an essential element of a claim for tortious interference with contract. *See PMC, Inc. v. Saban Entm't, Inc.*, 45 Cal. App. 4th 579, 599–600 (1996), *overruled in part on other grounds by Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 63 P.3d 937 (2003) ("It is logical to force the plaintiff to plead and prove an enforceable contract when stating a cause of action for intentional interference with contract.").

Accordingly, GFI and BHB acted, at minimum, recklessly in filing a frivolous tortious interference with contract claim without basis in fact or in law. As *Fink* explains, "sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose," as this combination supports a finding of bad faith. *Fink*, 239 F.3d at 994. Thus, a finding of bad faith is appropriate here where recklessness is combined with frivolousness. Such a finding is further supported by the "totality of the circumstances," or, otherwise stated, GFI's conduct during the litigation, which WFG argues evidence that GFI and BHB intended to use the litigation to harm WFG's reputation and to obtain documents to leverage in a parallel arbitration proceeding. Hr'g Tr. 21:17–22:22; Mot. 19.

Relatively early written discovery should have alerted GFI to the absence of contracts or contractual interference, prompting BHB and GFI to strike or amend portions of its TAC, but GFI and BHB did not do so. On May 14, 2025, WFG issued document requests to GFI seeking the contracts with which GFI alleged WFG tortiously interfered. Hynes Decl. ISO Mot, Exhibit 28 Request 22, ECF No. 312-29. At a minimum, WFG's request should have prompted GFI and BHB to identify GFI's contracts with the third-party providers named in the TAC if they had not

conducted this investigation previously. The results would have led to the realization that there were no contracts between GFI, on the one hand, and Nationwide, Pacific Life, Transamerica, or Allianz, on the other. At this point, GFI and BHB could have withdrawn the allegations regarding these four insurance providers. *See* Reply 3.[2] Instead, GFI and BHB did nothing while WFG, unable to secure proof of these contracts from GFI, served third-party discovery on the providers. Mot. 5. It was only from the documents produced by the non-party insurance providers that WFG learned that GFI did not have contracts with Nationwide, Pacific Life, Transamerica, and Allianz. *Id.*

WFG also directs the Court to instances in which GFI and BHB made "false" statements to the Court, perhaps most notably, during a March 6, 2025, hearing on WFG's motion to intervene in *Olson et al. v. Perez*, No. 24-cv-03697-EJD. Mot. 19. There, WFG's counsel explained to the Court that "to the extent there is a witness that is relevant to both of these matters, I think the Parties can work together." *Olson et al. v. Perez*, No. 24-cv-03697-EJD, ECF No. 56 at 7:23–8:1. The Court asked whether there were any remaining depositions and, in response, WFG's counsel explained that it was her understanding that Mr. Perez had not yet been deposed. *Id.* at 8:7–8:19. Counsel caveated her statement with the fact that, because WFG had not been a party to the case, it had not received notices of who had been deposed. *Id.* BHB's counsel did not correct WFG's counsel or alert her, or the Court, to the fact that Mr. Perez had been deposed just several weeks earlier. Mot. 19. Mr. Perez was an important fixture in GFI's claims against WFG; GFI alleged that WFG asked Mr. Perez to unlawfully access Mr. Olson's email and subsequently used the resulting information to interfere with GFI's contractual relationships and prevent WFG employees from going to GFI. TAC ¶ 80–81. Accordingly, whether WFG would be able to

[2] During the June 25, 2026, Hearing on this Motion, Mr. Borden informed the Court that the fact that GFI did not have contracts with four of the named insurance providers came to their attention when WFG served a discovery request "asking for them and [they] went to look." Hr'g Tr. 31:25–32:4. Mr. Borden stated that this was "towards December, maybe November." *Id.* The Court notes that WFG's document request is dated May 14, 2025—well before November or December 2025. *See* Hynes Declaration in Support of Motion for Sanctions, Exhibit 28.

intervene in the *Olson et al. v. Perez* action prior to Mr. Perez's deposition was a non-trivial fact. GFI's attempt to minimize this fact, even going so far as to suggest that it was "for reasons unknown," that WFG's counsel represented this fact to the Court, supports concluding that the totality of the circumstances demonstrate GFI and BHB's bad faith. Opp'n 27. WFG's counsel made this representation because the Court asked about the status of Mr. Perez's deposition.

For the above reasons, the Court **GRANTS** WFG's Motion to the extent that it was premised on alleged contracts with Nationwide, Pacific Life, Transamerica, Allianz, and Symetra. WFG may recover fees and costs associated with litigating GFI's tortious interference with contract claim as it related to contracts with Nationwide, Pacific Life, Transamerica, Allianz, and Symetra.

**2. UCL Claim**

Next, WFG argues that GFI and BHB lacked a good faith basis for GFI's UCL claim against WFG and have otherwise misrepresented the state of this claim to the Court. *See* Mot. 7–8. In the TAC, GFI's UCL claim was supported by an assertion that WFG made unlawful threats and "weaponized" confidential information that GFI alleges WFG stole from GFI. Mot. 9; *see also* TAC ¶ 90. WFG argues that GFI never produced any evidence to support this claim, despite earlier telling the Court that Plaintiffs "have some declarations expressing the threats that GFI experienced." Prelim. Inj. Hr'g Tr. 33:7–11, ECF No. 168. And ultimately, WFG claims that GFI and BHB "abruptly abandoned the UCL claim" during an August 27, 2025, hearing before Judge Cousins when GFI and BHB realized that there was no factual basis for the claim. Hr'g Tr. Aug. 27, 2025, ECF No. 246 at 12:12–18. GFI, on the other hand, contends that after the Court dismissed its UCL claim a second time, GFI did not amend, such that "it was not part of the litigation going forward" and argues that WFG acknowledged that the tortious interference claim was the only remaining claim in discovery-related filings in September and October 2025. Opp'n 5, 11 (citing ECF Nos. 248, 250, 252). WFG suggests that GFI and BHB's insistence now that the claim was "never live" is indicative of the fact that GFI and BHB knew that the claim was baseless

United States District Court
Northern District of California

from the outset. Reply 5.

WFG describes GFI and BHB as taking "shifting positions" regarding the UCL claim that are "impossible to follow." *Id.* The Court agrees with this description. If the UCL claim was not "live" after the Court dismissed the SAC as GFI argues, then GFI need not have included this cause of action in its TAC. But it did, purportedly to "have it for posterity and [for] the ability to appeal at the end of the road." Hr'g Tr. 43:22–44:2. Fundamentally, the purpose of a complaint is not to include claims for "posterity" but to provide a defendant with notice of the claims advanced against them. *See Contreras v. JPMorgan Chase Bank*, No. CV 09-3176, 2010 WL 11589998, at *2 (N.D. Cal. Jan. 12, 2010). In conjunction with GFI's refusal to join in a request that the Court order the Parties to enter a stipulation agreeing that GFI was not pursuing its UCL claim in this litigation and striking the UCL claim from the operative TAC, the Court finds that WFG's understanding that the UCL claim was "live" to the extent it was based on threats and intimidations of agents "*separate from* the agent agreements," was reasonable. ECF No. 252 2-3; *see also* Reply 5; Proposed Order, ECF No. 252-1. GFI's continued insistence to the contrary is certainly troubling. However, based on the facts presented and the Parties' argument, the Court cannot conclude that GFI lacked a good faith basis for bringing the claim or that the claim was frivolous, as WFG argues. There is no concrete evidence that undercuts GFI's theory that former WFG employees avoided leaving WFG due to threats, nor does WFG cite any authority for its implicit position that GFI should have produced declarations and identified specific individuals who experienced these threats by this point in the action. *See* Opp'n 11–12.

Accordingly, WFG's motion for sanctions based on GFI's maintenance of the UCL claim is **DENIED**.

### C. Sanctions Pursuant to 28 U.S.C. § 1927

28 U.S.C. § 1927 provides that an attorney, but not a party, "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such

conduct." 28 U.S.C. § 1927.

As under the Court's inherent authority, sanctions liability under § 1927 also "requires a finding of bad faith." *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1122 (9th Cir. 1991); *see also Calgene, Inc. v. Enzo Biochem, Inc.*, 1993 WL 645999, at *4 (E.D. Cal. Aug. 27, 1993) ("Since sanctions under the court's inherent authority provides for the same degree of wrongful conduct as that applied with respect to § 1927, there is no need for analysis duplicative to that discussed above."). Bad faith is measured under a subjective standard. *MGIC Indem. Corp.*, 952 F.2d at 1122. Knowing or reckless conduct meets this standard, but negligence does not. *Id.* § 1927 also imposes a duty on attorneys to correct or withdraw litigation positions after it becomes obvious that they are meritless. *In re Girardi*, 611 F.3d 1027, 1064 (9th Cir. 2010). Generally, § 1927 sanctions "should be limited to the amount necessary to deter similar kinds of misconduct in the future." *Raydiant Oximetry, Inc.*, 808 F. Supp. at 1006. Though some circuits have interpreted "any attorney" to include law firms, the Ninth Circuit has clearly held that § 1927 does not allow sanctions to be awarded against a law firm, rather only against attorneys. *Kaas L. v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293–94 (9th Cir. 2015) ("[W]e hold that 28 U.S.C. § 1927 does not permit the award of sanctions against a law firm.").

WFG argues that the Court should hold BHB jointly and severally liable under § 1927 for knowingly filing and maintaining frivolous claims. Mot. 20. According to WFG, BHB failed to perform "basic task[s]" or conduct a cursory investigation into Plaintiffs' claims, for example by confirming with their client that the contracts identified in the SAC and TAC existed or whether GFI suffered any damages. *Id.* at 22. Beyond filing "knowingly false allegations," WFG argues that BHB and GFI pushed forward rather than moving to dismiss the meritless claims, in turn generating extensive discovery fights. *Id.* Aside from reiterating arguments that GFI cannot establish subjective bad faith, GFI counters that WFG's request fails as a matter of law because § 1927 does not allow recovery of sanctions against a law firm. Instead, WFG must identify actions by individual counsel that reflect that counsel's subjective bad faith. Opp'n 23 (citing *Kaass L.*,

United States District Court
Northern District of California

799 F.3d at 1293–94.). In its Reply, WFG includes a footnote stating that all references to BHB in its Motion "refer to both the law firm and individual attorneys who perpetrated bad faith conduct through their representation of GFI." Reply 1 n.1. The lead partners are Matthew Borden and Molly Jamison. *Id.*

As WFG's counsel suggested, it is often difficult for a firm outsider to determine how work is allocated at a law firm; there is no certain way to know which attorney may be reviewing documents relevant to a certain claim and whether that attorney is the same attorney engaged in putting pen to paper on the pleadings. *See* Hr'g Tr. 25:13–26:7. Accordingly, it may be a challenge to provide more than lead counsel's name in a § 1927 motion. Here, WFG did not initially include attorneys' names in its Motion, though corrected the deficiency by incorporating names in their Reply.[3] Looking to other § 1927 cases decided in this Circuit, the Court notes that in *Lake v. Gates*, a case cited by GFI, though not contested by lead attorneys on appeal, the Ninth Circuit affirmed the district court's grant of defendant's motion for sanctions where the motion referred to "Plaintiffs' counsel" but did not refer to individual attorneys by name. *See Lake v. Gates*, 130 F.4th 1064, 1070–71 (9th Cir. 2025); *Lake v. Hobbs, et al.*, No. 2:22-cv-00677-JJT, ECF No. 97 (D. Ariz. Aug. 10, 2022). Accordingly, the Court does not find that the fact that WFG referred to "BHB" in the first instance, rather than to Mr. Borden or Ms. Jamison, who served as lead counsel, precludes WFG from recovering attorneys' fees under § 1927.

For the reasons discussed above with respect to BHB's maintenance of a frivolous tortious interference with contract claim, the Court finds that sanctions are alternatively appropriate under § 1927 to the same extent as pursuant to the Court's inherent authority.[4] *See supra* II.B.1. Accordingly, the Court **GRANTS** WFG's motion for sanctions pursuant to § 1927 as to the

[3] Reply 1 n.1.
[4] Although unnecessary to resolve the Motion, the Court notes that the maintenance of claims of tortious interference of contract as against the five providers added in the TAC certainly multiplied the proceedings. WFG undertook third-party discovery to confirm the existence of contracts and whether there was any proof of disruption to these contracts, discovery which doubtlessly led to additional discovery disputes. Mot. 22.

United States District Court
Northern District of California

tortious interference with contract claim to the extent the claim is premised on alleged contracts with Nationwide, Pacific Life, Transamerica, Allianz, and Symetra.

**D. Future Deterrence**

WFG encourages the Court to consider a purported pattern of BHB's misconduct. *See* Mot. 23 ("BHB has been sanctioned at least four different times for making frivolous claims followed by scorched-earth discovery and unwarranted, personal attacks on opposing counsel."). Consistent with other courts, the Court declines to impose sanctions under § 1927 for conduct unrelated to this litigation. *See GRiD Sys. Corp. v. John Fluke Mfg. Co.*, 41 F.3d 1318, 1319–20 (9th Cir. 1994); *Oliver v. In-N-Out Burgers*, 945 F. Supp. 2d 1126, 1130 n.1 (S.D. Cal. May 10, 2013).

## III. MOTION FOR VOLUNTARY DISMISSAL

GFI moves for voluntary dismissal of GFI's non-arbitrable claims with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). Mot. for Voluntary Dismissal ("MVD"), ECF No. 278. WFG requests that the Court enter an order dismissing the non-arbitrable claims with prejudice, but condition the dismissal on (1) GFI's compliance with Magistrate Judge Cousin's October 24, October 27, and December 18, 2025 discovery orders, as well as the preservation of all ESI that GFI custodians use or have used to conduct GFI business; (2) award WFG costs and attorneys' fees for defending GFI's "frivolous claims"; (3) retain jurisdiction to enforce the conditions of dismissal and adjudicate WFG's sanctions motions (since filed at ECF Nos. 300 and 312); and (4) explicitly include the UCL claim in the dismissal order. Response to Mot. ("Response") 3, ECF No. 296. WFG contends that these conditions will even the playing field.

**A. Legal Standard**

Federal Rule of Civil Procedure 41(a)(2) "allows a plaintiff, pursuant to an order of the court, and subject to any terms and conditions the court deems proper, to dismiss an action without prejudice at any time." *Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996). "A district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a

defendant can show that it will suffer some plain legal prejudice as a result." *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001) (citing *Waller v. Fin. Corp. of Am*., 828 F.2d 579, 583 (9th Cir. 1987). Legal prejudice refers to "prejudice to some legal interest, some legal claim, some legal argument." *Westlands Water Dist.*, 100 F.3d at 97; *see also Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1282 (9th Cir. 2023) (noting that legal prejudice does not result when a plaintiff gains some tactical advantage from dismissal). When the dismissal sought is with prejudice, "that is another factor weighing against any finding of legal prejudice to the defendant. *Chavez v. Wal-Mart Stores Inc.*, 2014 WL 12591672, at *2 (C.D. Cal. Nov. 14, 2014) (citing *Smith*, 263 F.3d at 976); *Kamal*, 88 F.4th at 128.

**B. Discussion**

When confronted with a motion for voluntary dismissal pursuant to Rule 41(a)(2), the Court must determine: (1) whether to allow dismissal; (2) whether the dismissal should be with or without prejudice; and (3) what terms and conditions, if any, should be imposed. *Fraley v. Facebook, Inc.*, No. 11-CV-01726-LHK, 2012 WL 893152, at *2 (N.D. Cal. Mar. 13, 2012) (quoting *Williams v. Peralta Cmty. Coll. Dist.*, 227 F.R.D. 538, 539 (N.D. Cal. 2005)).

**1. Whether to Allow Dismissal**

GFI asserts that good cause exists for the Court to grant its Motion because "the alleged interference has ceased; GFI's provider relationships have stabilized; the arbitration hearing is imminent and will determine the overwhelming majority of damages WFG owes; and the potential damages associated with the discrete, non-arbitrated conduct at issue here are likely outweighed by the burden, business distraction and expense of further litigation relative to the claims already proceeding in arbitration." MVD 2. Although it does not oppose the dismissal of GFI's claims against it with prejudice, WFG contends that GFI strategically filed this Motion to avoid complying with court-ordered discovery obligations while maintaining a tactical advantage in related proceedings. Response 2, 4, 11 ("Then, once GFI was ordered to complete its own document productions by December 23, 2025, and produce communications from a previously

concealed phone by January 7, 2026, it unilaterally moved for dismissal and refused to comply with Judge Cousins' October 24, October 27 and December 18, 2025, orders."). GFI also argues that there will be no legal prejudice to WFG. MVD 2. Because GFI requests that the dismissal be with prejudice, WFG does not face a risk of future litigation concerning the claims. *Id.* WFG argues, on the other hand, that, "[b]y dismissing at this juncture, GFI deprives WFGIA of its ability to vindicate itself against the inflammatory allegations [made by GFI], and avoid producing (1) discovery that will help GFI in the arbitration; and (2) discovery that will support WFGIA's motion for sanctions." Response 11.[5] WFG contends that GFI's ability to avoid these obligations results in prejudice to WFG. *Id.* WFG notes that prejudice to discovery rights and to the recovery of attorneys' fees are both cognizable prejudices in some circumstances. *Id.*

Though the Parties agree that dismissal is appropriate, the Court considers WFG's two asserted grounds of prejudice: discovery rights and attorneys' fees recovery. *See* Response 11. First, WFG suggests that its discovery rights will be prejudiced by dismissing at this juncture. *Id.* In support of this argument, WFG relies on *Hyde & Drath v. Baker*, 24 F.3d 1162, 1165 (9th Cir. 1994), *as amended* (July 25, 1994). *Hyde & Drath* involved fraud and RICO claims brought by several corporate plaintiffs related to various real estate deals. *Id.* On appeal, defendants argued that denial of the corporate plaintiff's motion for voluntary dismissal was appropriate because the court had reason to believe that, "without [the corporate plaintiff's] continued involvement, [defendants] would be unable to untangle" the remaining plaintiffs' claims and adequately defend themselves. *Id.* at 1169. In particular, the court considered, and, according to the Ninth Circuit, "reasonably concluded" that the corporate plaintiff's continued participation "was necessary to explain its presence in the allegedly fraudulent deal," as the case proceeded. *Id.* The district court accordingly denied the plaintiff's motion for voluntary dismissal until it had fully complied with

[5] GFI argues that "[a] party does not suffer prejudice from the loss of an ability to purportedly 'vindicate' itself. MVD Reply 7, ECF No. 304 (citing *Evenflo Co., Inc. v. Augustine*, 2015 WL 7568663, at *3–4 (S.D. Cal. Nov. 24, 2015)). Because WFG receives complete relief as a result of GFI's requested dismissal with prejudice, GFI contends that there is no further right to "vindicate" its claims. Reply 8. The Court nevertheless considers WFG's prejudice arguments.

United States District Court
Northern District of California

outstanding discovery orders. *Id.* at 1165. Although WFG seeks to minimize the distinctions between this action and *Hyde & Drath*, the Court is not persuaded that this case is instructive. *See* Response 14. Indeed, *Hyde & Drath* involved a situation in which only one of several corporate plaintiffs sought to dismiss the action and the remaining plaintiffs continued to litigate, such that the defendants still had to mount a defense against the claims. Further, as GFI points out, the defendants in *Hyde & Drath* would have lost "any ability to seek discovery to defend itself against ongoing claims." MVD Reply 6. Here, a dismissal with prejudice extinguishes the claims altogether, and to the extent that WFG needs specific discovery to defend itself in the arbitration, it can seek such discovery from the arbitrator.

The Court also considers *Trendsettah USA, Inc. v. Swisher Int'l Inc.*, in which the district court considered defendant's argument that the court should impose a condition protecting the defendant's right to certain discovery to avoid prejudice. 2020 WL 6785301, at *1 (C.D. Cal. Sept. 16, 2020). The court declined to condition the dismissal on any further discovery finding that the cases cited for "the proposition that [a litigant] is entitled to discovery . . . seem to deal with situations where there is ongoing collateral litigation between the parties or related third-party litigation where the discovery would be relevant and somewhat time critical." *Id.* at *3 (citing *Hyde & Drath*, 24 F.3d at 1165; *In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996) (finding that the district court's three reasons for denying the motions for voluntary dismissal—including that allowing dismissal after the defendants spent two and a half years and substantial money to obtain discovery would prejudice the defendants and that each plaintiff should remain a named plaintiff in at least one action to avoid a future need for substantial refiling should the classes be certified—were reasonable)). WFG contends that there is "ongoing collateral litigation" between the parties for which this discovery is not only relevant but critical, citing relevance to the "claims in the litigation" and to the "parties' parallel arbitration pending before Judge Volkmann." Response 14. WFG, however, does not include support for its position that the parallel arbitration is synonymous with collateral litigation, and for the same reasons as

discussed with respect to *Hyde & Drath*, cannot claim that it may not seek discovery in the action before the arbitrator. Accordingly, the Court finds that under these circumstances, WFG will not suffer legal prejudice to its discovery rights from the dismissal of GFI's non-arbitrable claims.

Next, the Court considers WFG's argument that "prejudice to recovery of attorneys' fees is a cognizable prejudice under rule 41." Response 11. In support of this position, WFG relies on cases in which courts found that the dismissal might cause the defendant to lose a substantial right—their prevailing party status—which affords that party to pursue attorneys' fees and expenses under Rule 54(d)(2) or other statutory authority. *See, e.g.*, *Munchkin, Inc. v. Luv N' Care, Ltd.*, 2018 WL 7507424, at *1 (C.D. Cal. May 2, 2018); *Trendsettah*, 2020 WL 6785301, at *2; *Peschke Map Techs. LLC v. Miromar Dev. Corp.*, 2016 WL 1546465, at *3 (M.D. Fla. Apr. 15, 2016). WFG explains that it "intends to [and has since] move for sanctions against GFI, seeking its attorneys' fees and costs in having to defend against GFI's frivolous claims." Response 15. Because courts have consistently found that district courts retain jurisdiction over sanctions motions even after a voluntary Rule 41(a) dismissal, WFG will not suffer any legal prejudice as a result of voluntary dismissal. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 384 (1990), *superseded by statute on other grounds*, Fed. R. Civ. P. 11; *In re Cashion Fam. Tr.*, 2025 WL 3776896, at *10 (B.A.P. 9th Cir. Dec. 31, 2025) ("Even when a plaintiff voluntarily dismisses a case, the court retains jurisdiction to conduct sanction proceedings and impose any authorized sanction for abusive conduct."); *A Truly Elec. Car Co. v. Magna Int'l, Inc.*, No. C 09-01364 MHP, 2010 WL 11922069, at *2 (N.D. Cal. Feb. 16, 2010) ("The case law makes clear that a voluntary dismissal does not remove a district court's jurisdiction over a motion for sanctions pursuant to 28 U.S.C. section 1927 or the court's inherent power.")' *Osorio v. Tran*, No. C08-04007 HRL, 2009 WL 2485554, at *3 (N.D. Cal. Aug. 12, 2009) ("[V]oluntary dismissal does not rob this court of jurisdiction to hear [sanctions] issue [and a]s a result, defendants have not shown that they will suffer prejudice to a legal interest, claim, or argument such that this court should deny plaintiffs' request for a voluntary dismissal with prejudice.").

United States District Court
Northern District of California

**2. Whether the Dismissal Should Be With or Without Prejudice**

Here, GFI seeks—and WFG does not oppose—dismissal of GFI's non-arbitrable claims with prejudice. *See* MVD 1 ("Plaintiff Global Financial Impact, LLC ("GFI") respectfully moves to voluntarily dismiss all GFI's non-arbitrable claims with prejudice pursuant to FRCP 41(a)(2)); Response 11 (WFG does not oppose the dismissal of GFI's claims against it with prejudice). Accordingly, the Court finds that the dismissal should be with prejudice.

**3. Terms and Conditions of Dismissal**

Finally, the Court turns to what terms and conditions should be imposed, if any. WFG asks that the Court exercise its discretion to impose certain conditions on GFI's voluntary dismissal of its claims. Response 12 (citing *Harang v. United States (In re Harang)*, 634 B.R. 731, 736 (6th Cir. 2021) for the notion that a dismissal with prejudice does not create an absolute right to dismissal without conditions). The Court considers each requested condition in turn.

***First***, WFG asks that the Court condition dismissal on GFI's compliance with prior discovery orders. *Id.* at 13. WFG contends that this condition is necessary to even the playing field because GFI is free to use discovery that it obtained from WFG in this case for the ongoing arbitration, as well as to use the Perez Action (*Olson v. Perez*, 5:24-cv-03697 (N.D. Cal.)) to get further discovery for arbitration, meanwhile WFG has been deprived of the same benefit because GFI has not produced comparable discovery. *Id.* GFI disagrees with WFG's characterization, noting that any discovery that it received relates to the claims that GFI now seeks to dismiss, and WFG may seek discovery in arbitration. MVD Reply 2. GFI notes that it is willing to stipulate that in arbitration, neither side will use any evidence produced in this case related to GFI's tortious interference claims. *Id.*

In support of its request for a condition requiring compliance with Judge Cousins' discovery orders, WFG relies upon *Hyde & Drath* and *Trendsettah*, which the Court has discussed above. *See supra* § III.B.1. For the same reasons as discussed earlier, the Court finds that because WFG may request discovery from Judge Volkmann in the pending arbitration, it is not necessary to require GFI to comply with Judge Cousins' discovery orders as a condition of dismissal.

Further, the arbitrable claims are distinct from those subject to dismissal, raising questions about the relatedness of any discovery sought here to the defense of those claims. Reply 5 (explaining that the claims in arbitration relate to WFG's termination of Mr. Olson's right to sell his business, the alleged misuse of restrictive covenants, and WFG's assertion that the Olsons and GFI took confidential information, *not* alleged interference by WFG with GFI's contractual relationships).

In the alternative, WFG argues that even if the Court finds that there is no legal prejudice to WFG, the Court has discretion to condition dismissal on GFI's compliance with the Court-ordered discovery. WFG relies on *His all Holiness Bartholomew I, The Archbishop of Constantinople, New Rome, & Ecumenical Patriarch v. Princeton Univ.*, where the court indicated that a plain reading of a prior order indicated that the dismissal of two plaintiffs was conditioned on completion of two outstanding discovery requests addressed to them. 2023 WL 4135025, at *5 (D.N.J. June 22, 2023). As in *Hyde & Bath* the action involved multiple plaintiffs—only two of whom sought to be voluntarily dismissed. *See His all Holiness*, No. 18-cv-17195-RK-JTQ, ECF No. 44 (D.N.J. July 23, 2020). The defendant argued that it would suffer legal prejudice if it was unable to obtain "case-dispositive discovery" from the two moving plaintiffs. *Id.* at 4. In conditioning voluntary dismissal upon plaintiffs' response to discovery requests served prior to the motion for voluntary dismissal, the court noted that dismissal of the two plaintiffs would not dispose of the entire matter, because the defendant would still need to mount a defense against the remaining plaintiff. *Id.* at 6. Despite WFG's reliance on this case to underscore courts' discretion to order compliance with discovery obligations in the absence of legal prejudice, the court in *His all Holiness* found the timing and reasoning for the plaintiffs' motion prejudicial. *Id.* at 7. Thus, the Court does not find that this case compels a different conclusion than the one that it has already reached.

Defendant's reliance on *Opperman v. Path, Inc.* is more apt, though still distinguishable from the case at hand. *Opperman v. Path, Inc.*, No. 13-CV-00453-JST, 2015 WL 9311888, at *3 (N.D. Cal. Dec. 22, 2015). There, a plaintiff sought to withdraw as a putative class representative

United States District Court
Northern District of California

and to dismiss her claims without prejudice. *Id.* at *1. She was one of 14 plaintiffs in the action challenging conduct by Apple and various app developers. *Id.* Defendants did not assert that they would suffer any prejudice if the case was dismissed, nor oppose the request for dismissal. *Id.* at *2. The court granted defendants' request that the court condition plaintiff's voluntary dismissal on plaintiff's response to previously propounded discovery requests and her participation in a deposition if one was noticed. *Id.* at *3. In imposing the conditions, the court noted that plaintiff's "responses [could] be relevant to class certification issues, such as commonality, predominance, and typicality." *Id.* The court also commented that the plaintiff might have information pertinent to the case that she initiated and that defendants must "continue to defend." *Id.* (citing *Alliance For Global Justice v. District of Columbia*, 2005 WL 469593, at *3 (D.D.C. Feb. 7, 2005). Here, because the dismissal sought is *with* prejudice, WFG will not need to continue to defend itself against the claims, nor is there a future question of class certification as was this case in *Opperman*. Accordingly, the Court declines to exercise its discretion to condition dismissal on compliance with Judge Cousins' discovery orders to the extent that GFI has not already complied. *See generally* Reply 10–11 (explaining GFI's attempted compliance with discovery orders).

***Second***, WFG requests that the Court condition dismissal on the Court's retention of jurisdiction to enforce conditions imposed by this Order and to adjudicate the sanctions motion. Response 13. Judge Cousins has issued a ruling on WFG's motion for sanctions pursuant to Rule 37 (ECF No. 365), and this Order addresses WFG's motion for sanctions pursuant to the Court's inherent authority and under Section 1827. The Court will retain jurisdiction to ensure compliance with this Order. *See supra* § III.B.1 (discussing that courts are not divested of jurisdiction over sanctions motions following voluntary dismissal); *see also See Burnette v. Godshall*, 828 F. Supp. 1439, 1444 (N.D. Cal. 1993), *aff'd sub nom. Burnette v. Lockheed Missiles & Space Co.*, 72 F.3d 766 (9th Cir. 1995) ("A voluntary dismissal does not limit the court's power to impose sanctions against plaintiff under Fed. Ri. Civ. P. 11 for filing groundless claims" (citing *Cooter*, 496 U.S. at

395)).

***Third***, WFG seeks to have the UCL claim included in the Court's order granting voluntary dismissal with prejudice. Response 13. WFG explains the shifting positions that GFI has taken with respect to its UCL claim, taking the position that the tortious interference claim was the only claim remaining in the litigation, but still refusing to dismiss or strike the UCL-related allegations in the operative pleading. Response 16. Accordingly, WFG requests that any dismissal order expressly include a dismissal of GFI's UCL claim with prejudice. *Id.* at 16–17. Although the UCL claim remains in the operative complaint, GFI argues that WFG's insistence that "GFI must separately stipulate to dismiss claims that" GFI contends were already dismissed is an "example of Defendant's efforts to increase the costs of this litigation through pointless and arbitrary demands." Reply 15. As discussed above with respect to the UCL claim, WFG's belief that the claim remained "live" to the extent that it was based on threats and intimidations of agents was reasonable. *See supra* § II.B.2. Accordingly, the Court will expressly order dismissal of the UCL claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** WFG's motion for sanctions. The Court **GRANTS** WFG's motion to hold GFI and BHB jointly and severally liable for costs incurred in defending against GFI's tortious interference with contract claim to the extent it was premised on alleged contracts with Nationwide, Pacific Life, Transamerica, Allianz, and Symetra. The Court otherwise **DENIES** the motion for sanctions. The Court also **GRANTS** GFI's motion for voluntary dismissal.

The Court further **ORDERS** as follows:

1. WFG **SHALL** submit proof of its fees and costs within 30 days of this Order.
2. GFI's non-arbitrable claims against WFG, including the UCL claim, are **DISMISSED WITH PREJUDICE**.
3. The Court **RETAINS** jurisdiction to ensure compliance with this Order.

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: September 29, 2026

EDWARD J. DAVILA
United States District Judge